# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Hannah*, 2013 IL App (1st) 111660

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LAROYAL HANNAH, Defendant-Appellant. |
| District & No. | First District, First Division <br> Docket No. 1-11-1660 |
| Filed | June 3, 2013 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for unlawful possession of a weapon by a felon was upheld over his contentions that the State failed to prove the *corpus delicti* and that the denial of his motion to disclose the identity of the informant and the motion to suppress his incriminating statement made during the search were errors, since defendant did not dispute his prior felony and the evidence corroborated his confession, defendant did not sustain his burden of showing that disclosure of the informant was necessary to his defense, and the denial of his motion to suppress was harmless in view of the incriminating statement he made at the police station after *Miranda* warnings had been given. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-10267; the Hon. Mary M. Brosnahan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Patrick F. Cassidy, of Criminal Appeals Clinic, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Matthew Connors, and Anne L. Magats, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Hoffman and Justice Delort concurred in the judgment and opinion.

**OPINION**

¶ 1 Following a bench trial in the circuit court of Cook County, defendant Laroyal Hannah was convicted of unlawful possession of a weapon by a felon and sentenced to two years of probation. On direct appeal, the defendant argues that: (1) the State failed to prove the *corpus delicti* of the offense; (2) the trial court erred in denying his pretrial motion to disclose the identity of the confidential informant; and (3) the trial court erred in denying his pretrial motion to suppress his incriminating statement to the police. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                    BACKGROUND

¶ 3 On May 8, 2010, Chicago police officers executed a search warrant for an apartment unit located at 8210 South Drexel Avenue in Chicago, Illinois. In the "complaint for search warrant," police officer Arshell Dennis (Officer Dennis) averred that on May 6, 2010, confidential informant "J. Doe" informed him that the confidential informant had purchased crack cocaine for $20 from a woman known as "Angela" at 8210 South Drexel Avenue. "Angela" gave the confidential informant crack cocaine from a clear plastic bag that contained numerous other plastic bags of suspected cocaine. The confidential informant told Officer Dennis that he frequently bought crack cocaine from "Angela" at that location, and that after making the purchase on May 6, 2010, the confidential informant smoked the crack cocaine that was purchased from "Angela." After receiving this information, Officer Dennis averred that the confidential informant positively identified 8210 South Drexel Avenue as the address where he had purchased crack cocaine from "Angela." As a result of the search, the police recovered suspected cocaine and a firearm from the residence. Thereafter, the defendant and a woman named Angelica McKnight (Angelica) were arrested.

¶ 4 On June 7, 2010, the defendant was charged with two counts of unlawful use or

-2-

possession of a weapon by a felon (counts I and II), and one count of possession of a controlled substance (count III).[1]

¶ 5     On September 8, 2010, the defendant filed a pretrial motion to compel disclosure of the identity of the confidential informant (motion to disclose), arguing that disclosure was warranted because the confidential informant may have information that would benefit the defense. Specifically, the defendant argued that because the confidential informant had been to the location at issue numerous times, had information about drug dealings there, and had not mentioned the defendant at all, the informant could provide information as to who lived at the residence and other potentially helpful information to the defense. In response to the motion to disclose, the State argued that public policy outweighed the need for disclosure of the confidential informant's identity, and that the defendant already possessed information that an individual other than the defendant had control of the apartment because the defendant was present at the time the search warrant was executed.

¶ 6     On November 15, 2010, following a hearing, the trial court denied the motion to disclose. The trial court noted that it was required to balance the public policy reasons for nondisclosure of the confidential informant against the defendant's need for disclosure in order to prepare a defense. The trial court noted that the complaint for search warrant mentioned a black female known as "Angela" who was making hand-to-hand drug transactions at the location at issue, but that the defendant was not charged with having committed any hand-to-hand drug transactions. Rather, the trial court noted, the defendant was charged under a theory of constructive possession of the recovered firearm and suspected cocaine. The trial court further stated that the purpose of the search warrant was to establish probable cause for the police to enter the premises and that the confidential informant was not present for the crimes the defendant was charged with committing on May 8, 2010. The trial court found that the defendant did not sustain his burden in showing that disclosure was necessary and that the defendant had not "established anything other than it would be a fishing expedition."

¶ 7     Subsequently, the defendant filed a motion to reconsider the trial court's denial of the motion to disclose, arguing that the burden was on the State to prevent disclosure of the identity of the confidential informant. Following a hearing on December 15, 2010 and February 24, 2011, the trial court denied the motion to reconsider its denial of the motion to disclose. In denying the motion to reconsider, the trial court noted that while the State did not articulate a "point by point basis" against disclosure, an individual who provides information to the police "to get somebody possibly arrested" could be in fear for his safety. The trial court stated that the prosecutors did not know the identity of the informant, but that the information was kept secret by the police "until there is some sort of mandatory disclosure order to the State." The trial court found that the fact that the confidential informant might not have seen the defendant at the residence during the informant's previous visits failed to prove that the defendant did not reside there or that he did not know about the existence of the narcotics. The trial court found that, "in doing the balancing test," disclosure

---

[1]Angelica was only charged with possession of a controlled substance (count III).

was not warranted and would only amount to a "fishing expedition."

¶ 8    On December 15, 2010, the defendant filed a pretrial motion to suppress statements that he made to the police at the time the search warrant was executed (motion to suppress), arguing that they were obtained in the absence of *Miranda* warnings. The State argued that the defendant was not subjected to a custodial interrogation so as to warrant the giving of *Miranda* warnings.

¶ 9    On February 24, 2011, prior to the start of trial, a hearing on the motion to suppress was held. At the hearing, Officer Dennis testified that at about noon on May 8, 2010, he and eight other police officers executed the search warrant at 8210 South Drexel Avenue in Chicago. He testified that the police officers, with weapons drawn, made a forced entry into the residence. Upon entry, he observed that the defendant was in the bedroom, after which the police officers detained or "secured" the defendant by handcuffing him. Officer Dennis testified that, at that time, the defendant was not free to leave the premises. The police officers then recovered a handgun in the apartment. The defendant then, without having been advised of his *Miranda* rights, made an incriminating statement to the police about the recovered handgun. Officer Dennis stated that the defendant was not named in the search warrant and that he was not seen violating any laws before he was placed in handcuffs. On cross-examination, Officer Dennis explained that, in order to ensure the safety of the police officers, the defendant was detained before the apartment was searched. Officer Dennis explained that, for the officers' safety and regardless of whether an occupant was the named target in a search warrant, he always detained occupants inside the residence when executing a search warrant. Officer Dennis stated that the police officers initially patted the defendant down, after which the defendant was brought into the living room and handcuffed. Angelica, along with a young child, was also found in the bedroom. Officer Dennis testified that the police then searched the bedroom and found a handgun. Officer Dennis then asked both the defendant and Angelica about the handgun, at which point the defendant responded with an incriminating statement. On redirect examination, Officer Dennis testified that no weapons were found on the defendant's person; that the defendant was handcuffed in the living room; that police officers remained with the defendant in the living room; that Angelica and a young child were found on the bed in the bedroom; and that the police officers also patted Angelica down. Officer Dennis clarified that, after the handgun was recovered from the bedroom, he asked both the defendant and Angelica "whose gun [was] this," to which the defendant made an incriminating statement to the police.

¶ 10    In denying the motion to suppress, the trial court found that *Miranda* warnings were not required because, while the defendant and Angelica were detained and not free to leave at the time the search warrant was executed, it was not a "custodial situation akin to an arrest at a police station where the officers had brought them there pursuant to probable cause." The trial court remarked that basically in every search warrant case, police officers secure the premises by gathering the people into one location and detaining them until a search has been conducted. The trial court further found that once the handgun was recovered by the police in this case and Officer Dennis had asked to whom the handgun belonged, the defendant and Angelica could have chosen not to say anything. The trial court stated that *Miranda* warnings would only have been required had there been any further questioning of the defendant after

-4-

he had made the incriminating statement to Officer Dennis at the residence.

¶ 11     On February 24, 2011, a bench trial commenced during which the defendant and Angelica, as the codefendant, were tried contemporaneously. Officer Dennis's testimony at trial was similar to his testimony at the hearing on the motion to suppress. Officer Dennis stated that, in executing the search warrant, police officers located the defendant, Angelica and a child sitting on a bed in the only bedroom in the apartment. Both the defendant and Angelica were clothed and awake. The police officers then immediately detained both the defendant and Angelica by patting them down, handcuffing them, and moving them to the living room. After the defendant and Angelica were detained, the police officers photographed the residence and conducted a search of the premises. Officer Dennis searched the bedroom, where he recovered a loaded semiautomatic .22-caliber handgun from between the mattresses on the bed. The handgun was not stored in a case. Officer Hoffman then photographed and inventoried the handgun. A pair of men's jeans and mail addressed to Angelica showing proof of residence at the apartment were also recovered from the bedroom. Officer Dennis also searched the front hall closet of the apartment, where he recovered a clear plastic bag containing suspected cocaine and other suspected narcotics packaging. The plastic bags were also photographed by Officer Hoffman. Officer Watts recovered approximately $1,100 from the kitchen. In the living room, Officer Dennis also asked both the defendant and Angelica who owned the handgun, and the defendant responded that the handgun belonged to him. Thereafter, the defendant and Angelica were arrested and transported to the police station. At the police station, at approximately 2:40 p.m., the defendant was advised of his *Miranda* rights and agreed to speak with Officer Dennis. The defendant informed Officer Dennis that he had obtained the handgun in Indiana and that it had been in his possession for about two years. On cross-examination, Officer Dennis testified that neither the handgun nor the plastic bag of suspected narcotics was tested for fingerprints. He also testified that the defendant did not reach between the mattresses for the handgun when the police officers began searching the premises. Officer Dennis testified that a "raid activity summary report" prepared by another officer in connection with this case listed a different address as the defendant's residence. He stated that only one bed was found in the apartment and that it was large enough to accommodate at least two people.

¶ 12     Officer Hoffman testified that he was the inventory officer during the execution of the search warrant in question. Upon entry into the apartment, the police officers secured the defendant and Angelica for the officers' safety by patting them down and relocating them to the living room. Officer Dennis lifted up a mattress on the bed in the bedroom and Officer Hoffman photographed a black handgun located on the box spring. Officer Hoffman then took possession of the handgun, which he described as a loaded .22-caliber semiautomatic handgun. Officer Hoffman also photographed and inventoried a plastic bag containing suspected crack cocaine, which was found in a front closet of the apartment. Other items that were recovered from the residence included United States currency, some narcotics packaging and proof of residence for Angelica.

¶ 13     Following Officer Hoffman's testimony at trial, the State introduced into evidence a certified copy of the defendant's felony conviction in 2001. The parties then stipulated that, if called to testify, forensics expert Mark Palomo (Palomo) would testify with a reasonable

degree of scientific certainty that the plastic bag of suspected cocaine tested positive for cocaine and weighed less than 0.1 gram. The State then rested.

¶ 14      Defense counsel then made a motion for a directed finding, which the trial court granted with respect to the charge of possession of a controlled substance (count III) but denied with respect to the charge of unlawful use or possession of a weapon by a felon (counts I and II). Defense counsel then requested the opportunity to research whether the State was required to prove that the defendant lived at the location where the handgun was recovered in order to sustain a charge of unlawful use or possession of a weapon by a felon. The trial court then continued the case to allow defense counsel the opportunity to conduct research on this question.

¶ 15      On March 15, 2011, on the next hearing date, the trial court denied the defendant's motion to reconsider the court's previous denial of the motion to suppress, finding that Officer Dennis's question to the defendant and Angelica during the search of the apartment regarding ownership of the handgun was "simply to determine again who was there, whose property it was" and that the police officer's questioning did not trigger the giving of *Miranda* warnings at that time. The trial court further commented that the defendant was being "gallant" by admitting ownership of the handgun because he did not want Angelica, "who had the one-year-old baby to get taken down for it." The trial court then explained that, even without the defendant's incriminating statement to Officer Dennis at the apartment, the police officers "could have arrested both [the defendant and Angelica] for possession of that weapon under constructive possession."

¶ 16      At the same hearing on March 15, 2011, defense counsel conceded that, after conducting further research, the State was not required to prove that the defendant lived in the apartment where the handgun was recovered in order to sustain a charge of unlawful possession of a weapon by a felon. Rather, the State must only prove that the defendant knowingly possessed the weapon and was a convicted felon. The trial court then found the defendant guilty of unlawful possession of a weapon by a felon (counts I and II).

¶ 17      On May 3, 2011, the defendant filed a posttrial motion, alleging that he was not proven guilty beyond a reasonable doubt and that the trial court erred in denying both his pretrial motion to disclose and motion to suppress. On May 11, 2011, the trial court denied the defendant's posttrial motion and sentenced him to two years of probation.

¶ 18      On May 24, 2011, the defendant filed a timely notice of appeal.

¶ 19                                                ANALYSIS

¶ 20      We determine the following issues on appeal: (1) whether the State proved the *corpus delicti* of unlawful possession of a weapon by a felon; (2) whether the trial court erred in denying the defendant's pretrial motion to disclose the identity of the confidential informant; and (3) whether the trial court erred in denying the defendant's pretrial motion to suppress his incriminating statement to the police at the time the search warrant was executed.

¶ 21      We first determine whether the State proved the *corpus delicti* of unlawful possession of a weapon by a felon.

¶ 22    The defendant argues that his conviction for unlawful possession of a weapon by a felon should be reversed because the State failed to prove the *corpus delicti* of the offense. Specifically, the defendant contends that his incriminating statement to the police that he owned the handgun that was recovered from the apartment was uncorroborated by any other evidence.

¶ 23    The State counters that the defendant's incriminating statements, coupled with the fact that the recovered handgun was immediately accessible to him from where he was sitting on the bed, established the *corpus delicti* of unlawful possession of a weapon by a felon.

¶ 24    The due process clause of the fourteenth amendment to the United States Constitution requires that a person may not be convicted " 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *People v. Cunningham*, 212 Ill. 2d 274, 278, 818 N.E.2d 304, 307 (2004) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). When a defendant challenges the sufficiency of the evidence, the appellate court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); see also *People v. Collins*, 214 Ill. 2d 206, 217, 824 N.E.2d 262, 267 (2005). In reviewing the evidence, a reviewing court will not retry the defendant or substitute its judgment for that of the trier of fact, and a conviction will not be set aside unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Sutherland*, 223 Ill. 2d 187, 242, 860 N.E.2d 178, 217 (2006).

¶ 25    To sustain a conviction for unlawful possession of a weapon by a felon, the State must prove: (1) the defendant had a prior felony; and (2) the defendant had knowing possession of the weapon. 720 ILCS 5/24-1.1(a) (West 2010); *People v. Brown*, 327 Ill. App. 3d 816, 824, 764 N.E.2d 562, 570 (2002). In the case at bar, evidence shows that the defendant confessed to owning the handgun recovered by the police at the apartment. The defendant does not dispute that he had been convicted of a prior felony.

¶ 26    However, in obtaining a valid conviction, the State must prove two propositions beyond a reasonable doubt: (1) that a crime has been committed–that is, the *corpus delicti*; and (2) the identity of the person who committed the offense. *People v. Lara*, 2012 IL 112370, ¶ 17. Generally, the *corpus delicti* cannot be proven solely by a defendant's admission, confession or out-of-court statement. *Id.* When the State uses a confession to prove, in part, the *corpus delicti*, it must also provide independent corroborating evidence. *Id.* (citing *People v. Sargent*, 239 Ill. 2d 166, 183, 940 N.E.2d 1045, 1055 (2010)). "To avoid running afoul of the *corpus delicti* rule, the independent corroborating evidence need only *tend to show* the commission of a crime." (Emphasis in original.) *Id.* ¶ 18. "It need not be so strong that it alone proves the commission of the charged offense beyond a reasonable doubt." *Id.*

¶ 27    Viewing the evidence in the light most favorable to the State, we find that the State proved the *corpus delicti* of the offense in order to sustain a conviction for unlawful possession of a weapon by a felon. Because the defendant does not dispute his prior felony conviction, the relevant inquiry before us to sustain his conviction is whether the State

proved that he knowingly possessed the handgun.

¶ 28    "Knowing possession" can be either actual or constructive. *Brown*, 327 Ill. App. 3d at 824, 764 N.E.2d at 570. Because the defendant was not found in actual possession of the handgun, the State had to present corroborating evidence that the defendant constructively possessed it. See *People v. McCarter*, 339 Ill. App. 3d 876, 879, 791 N.E.2d 1278, 1280 (2003). To establish constructive possession, the State must prove that the defendant: (1) had knowledge of the presence of the weapon; and (2) exercised immediate and exclusive control over the area where the weapon was found. *Id.* "Control is established when a person has the 'intent and capability to maintain control and dominion' over an item, even if he lacks personal present dominion over it." *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17 (quoting *People v. Frieberg*, 147 Ill. 2d 326, 361, 589 N.E.2d 508, 524 (1992)).

¶ 29    We find that, viewing the evidence in the light most favorable to the State, the evidence sufficiently corroborated the defendant's confession. The evidence shows that in executing the search warrant, police officers found the defendant, Angelica and a young child sitting on the bed in the sole bedroom of the apartment. Both the defendant and Angelica were clothed and awake. Officer Dennis testified at trial that he recovered a loaded semiautomatic .22-caliber handgun hidden between two mattresses on the bed. While the defendant and Angelica were handcuffed in the living room, the defendant informed Officer Dennis that he owned the handgun that was recovered by the police in the bedroom. We find that the *corpus delicti* of the offense was established through both the recovered handgun and the defendant's incriminating statement to Officer Dennis. The fact that the defendant was seated on the bed where the handgun was hidden made it immediately accessible to the defendant at the time the police executed the search warrant. See generally *Lara*, 2012 IL 112370, ¶ 18; see *Spencer*, 2012 IL App (1st) 102094, ¶¶ 18, 22 (recovery of the revolver from above the kitchen cabinet constituted sufficient evidence to corroborate defendant's incriminating statement). Because the defendant and Angelica were seated on the bed where the handgun was concealed at the time of the search, it cannot be said that he had *exclusive* control over the area. However, these facts suggest that he had *immediate* control over the area where the handgun was found. When coupled with his confession, it would not be unreasonable to infer that he concealed the weapon where it was found. This would *tend* to show that he unlawfully possessed the weapon. Thus, when one considers the slight level of evidence necessary to establish *corpus delicti*, we find that the State presented sufficient independent evidence corroborating the defendant's incriminating statement to the police in proving the *corpus delicti* of the offense.

¶ 30    Nonetheless, the defendant cites *People v. Harris*, 2012 IL App (1st) 100077, in support of his argument that the State failed to prove the *corpus delicti* of the offense for which he was convicted. In *Harris*, the defendant was convicted of unlawful use of a weapon in that he knowingly possessed a firearm "upon a public street." (Internal quotation marks omitted.) *Id.* ¶ 5. The State presented evidence that Officer Combs responded to a call of shots fired and spoke with a "concerned citizen" at the scene. *Id.* ¶ 7. The concerned citizen directed the officer to a parked car and, upon investigation, the officers found the defendant sitting in the driver's seat and recovered a black semiautomatic weapon from the center console of the vehicle. *Id.* ¶ 8. The defendant then told the officers that he owned the gun, and recounted

how he had run to the car, retrieved his gun and fired the weapon in response to a drive-by shooting. *Id.* ¶ 9. Officer Combs prepared a police report, which stated that the concerned citizen had told him that an individual " 'went to his car before the shooting, retrieved a black object and then went back to this car and returned the black object after the shooting.' " *Id.* ¶ 10. On appeal, the reviewing court reversed the defendant's conviction, finding that the State failed to prove the *corpus delicti* of the offense because the only evidence corroborating the defendant's incriminating statements to the police that he possessed a weapon "upon a public street" was the concerned citizen's statements to the police, which was a hearsay statement insufficient to satisfy the State's burden of proof. *Id.* ¶ 26.

¶ 31        We find *Harris* to be inapposite to the case at bar. Unlike *Harris*, the instant case did not concern any issues of hearsay testimony. Rather, Officer Dennis, as an eyewitness, testified at trial that he personally observed the defendant seated on the same bed where a handgun was found hidden between two mattresses. Additionally, the defendant was lawfully detained in the apartment while the search was conducted pursuant to a search warrant. Further, the *Harris* court did not explicitly consider whether a firearm recovered from the center console of the vehicle *tended to show* that the defendant committed a crime for the purposes of *corpus delicti*. As discussed, we find that the recovery of the handgun by the police in the case at bar when considered in conjunction with the location in which it was concealed and the defendant's corroborating statement, was sufficient to establish the *corpus delicti* of the offense.

¶ 32        We next determine whether the trial court erred in denying the defendant's pretrial motion to disclose the identity of the confidential informant. We review this issue under an abuse of discretion standard. *People v. Chavez*, 327 Ill. App. 3d 18, 35, 762 N.E.2d 553, 569 (2001). An abuse of discretion occurs where no reasonable man would take the view adopted by the trial court. *People v. Smith*, 406 Ill. App. 3d 747, 751, 941 N.E.2d 419, 423 (2010).

¶ 33        The defendant requests a new trial, arguing that the trial court should have granted his motion to disclose the identity of the confidential informant because the informant may have information that would potentially be favorable to the defense. He contends that the informant could have identified the defendant as a "non-resident" of the apartment, which would have undermined his connection to the handgun. The defendant maintains that the State failed to identify any risk to the informant's safety in opposing the motion to disclose. Further, he argues that the trial court erred in placing the burden on him to prove a need for the informant's identity, rather than on the State to show that disclosure presented a risk to the informant's safety.

¶ 34        The State counters that the trial court acted within its discretion in denying the motion to disclose, arguing that the defendant offered no more than "hope and speculation" that learning the informant's identity could possibly help his defense. The State contends that there was no evidence that the informant either participated in or was present for the crime for which the defendant was charged and convicted. The State maintains that the trial court did not improperly place the burden on the defendant to show that disclosure was necessary to prepare his defense. Moreover, the State argues that, even if the court erred in denying the motion to disclose, any error was harmless.

¶ 35    Supreme Court Rule 412(j)(ii) provides that "[d]isclosure of an informant's identity shall not be required where his identity is a prosecution secret and a failure to disclose will not infringe the constitutional rights of the accused." Ill. S. Ct. R. 412(j)(ii) (eff. Mar. 1, 2001). "In determining when disclosure is compelled, each case must be decided on its own facts, balancing the public's interest in [protecting] the flow of information against the individual's right to prepare a defense." (Internal quotation marks omitted.) *People v. Young*, 372 Ill. App. 3d 626, 628, 867 N.E.2d 1196, 1198 (2007). Courts may consider several factors in applying this balancing test and determining whether fundamental fairness demands disclosure: "(1) whether the request for disclosure relates to the fundamental question of guilt or innocence rather than to the preliminary issue of probable cause; (2) whether the informant played an active role in the criminal act by participating in and/or witnessing the [event]; (3) whether the informant assisted in setting up its commission as opposed to being merely a tipster; and (4) whether it has been shown that the informant's life or safety would likely by jeopardized by disclosure of his identity." (Internal quotation marks omitted.) *Chavez*, 327 Ill. App. 3d at 35, 762 N.E.2d at 569. The defendant has the burden to show that disclosure of the informant's identity is necessary to prepare his defense. *Young*, 372 Ill. App. 3d at 628, 867 N.E.2d at 1198; *People v. Clark*, 2013 IL App (2d) 120034, ¶ 33. "To meet his burden, the defendant must show that the defense theory that he relies on to obtain the [informant's] identity is founded on evidence, not speculation." *Clark*, 2013 IL App (2d) 120034, ¶ 33.

¶ 36    In denying the motion to disclose, the trial court noted that the information provided for the search warrant described a woman known as "Angela" who was making hand-to-hand drug transactions at the specified location, but that the defendant was not charged with having committed any hand-to-hand drug transactions. The trial court further stated that the purpose of the search warrant was to establish probable cause for the police to enter the premises, and that the confidential informant was not present for the crimes which the defendant was charged with committing. The trial court also found that the defendant did not sustain his burden in showing that disclosure was necessary for his defense, and that the defendant had not "established anything other than that it would be a fishing expedition." In denying the defendant's motion to reconsider its denial of the motion to disclose, the trial court stated that, while the State did not articulate a "point by point basis" against disclosure, an individual who provided information to the police "to get somebody possibly arrest" could be in fear for his safety. The trial court again remarked that, "in doing the balancing test," disclosure was not warranted because it would only amount to a "fishing expedition."

¶ 37    The evidence shows that the defendant's request for disclosure stemmed from his belief that the confidential informant may have information that would benefit the defense. As the trial court correctly observed, the information provided for the search warrant only made reference to "Angela" who was allegedly engaged in drug transactions at the residence. The confidential informant's information to the police only assisted in establishing the probable cause necessary to support the issuance of the search warrant, and had no relevance to the crimes for which the defendant was charged and convicted. See *Young*, 372 Ill. App. 3d at 628-29, 867 N.E.2d at 1198-99. The defendant presented no evidence that the confidential informant either played an active role in the criminal act with which the defendant was charged by participating in or witnessing the events leading to the defendant's conviction for

-10-

unlawful possession of a weapon by a felon. See *People v. Velez*, 204 Ill. App. 3d 318, 326, 562 N.E.2d 247, 252 (1990) ("where the unnamed informant was neither a participant or material witness to the essential elements of the offense, the informant is not a crucial witness and his identity can be withheld"). Nor could the confidential informant have provided testimony at trial regarding the defendant's charged offense. See *Young*, 372 Ill. App. 3d at 629, 867 N.E.2d at 1199 (defendant failed to establish a need for disclosure where informant had no role in defendant's possession of cocaine and could not have provided testimony concerning the charged offense). The defendant argues for disclosure on the basis that the confidential informant could have identified the defendant as a "non-resident" of the apartment, which would have undermined his connection to the handgun. However, information that supported the defense theory–that is, that he lived at a different location–was already brought forth by Officer Dennis's testimony during cross-examination at trial. Further, as the trial court correctly noted, the mere fact that the informant might not previously have seen the defendant at the residence did not prove that the defendant did not live there. The record supports the trial court's finding that the defendant did not sustain his burden of showing that disclosure was necessary to his defense. Thus, the record supports the trial court's finding that, in balancing the State's interest in nondisclosure against the defendant's right to prepare a defense, disclosure was not warranted. The defendant makes a number of other arguments in support of his contention that he was entitled to know the identity of the confidential informant in order to prepare his defense. We find those remaining arguments made by him and the cases cited in support to be without merit as applied to the facts of this case. Therefore, we hold that the trial court did not abuse its discretion in denying the defendant's motion to disclose.

¶ 38    We next determine whether the trial court erred in denying the defendant's pretrial motion to suppress his incriminating statement to the police at the time the search warrant was executed.

¶ 39    The defendant argues that the trial court erred in denying his motion to suppress his incriminating statement to Officer Dennis at the time the search warrant was executed. He contends that the incriminating statement was a product of custodial interrogation, and that he should have been given *Miranda* warnings before being questioned by Officer Dennis. The defendant maintains that the trial court error was not harmless.

¶ 40    The State argues that the trial court properly denied the motion to suppress, where the totality of the facts and circumstances established that *Miranda* warnings were not required to be given to the defendant because he was not in custody and he was only subjected to "general on-the-scene investigatory questioning" related to the execution of the search warrant. The State further contends that, even assuming the trial court erred, any error was harmless because the defendant subsequently made a second incriminating statement after he was Mirandized at the police station.

¶ 41    In reviewing the trial court's ruling on a motion to suppress evidence, we accord great deference to the trial court's factual findings and credibility determinations and will reverse them only if they are against the manifest weight of the evidence. *People v. Slater*, 228 Ill. 2d 137, 149, 886 N.E.2d 986, 994 (2008). "We review *de novo*, however, the ultimate question posed by the legal challenge to the trial court's ruling on a suppression motion." *Id.*

Further, "it is proper for us to consider the testimony adduced at trial, as well as at the suppression hearing." *Id.* "Where a defendant challenges the admissibility of a confession through a motion to suppress, the State bears the burden of proving the confession was voluntary by a preponderance of the evidence." *Id.*

¶ 42    In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that, prior to the start of an interrogation, a person being questioned by law enforcement officers must first "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed," as long as that person has been "taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. "The finding of custody is essential, as the preinterrogation warnings required by *Miranda* are intended to assure that any inculpatory statement made by a defendant is not simply the product of 'the compulsion inherent in custodial surroundings.' " (Internal quotation marks omitted.) *Slater*, 228 Ill. 2d at 149, 886 N.E.2d at 994 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004)). Accordingly, it is well recognized that *Miranda* is not triggered, and the admonishments are not required, when police conduct general investigatory on-the-scene questioning as to the facts surrounding a crime. *People v. Parks*, 48 Ill. 2d 232, 237, 269 N.E.2d 484, 487 (1971); *People v. Peterson*, 372 Ill. App. 3d 1010, 1018, 868 N.E.2d 329, 335 (2007); *People v. Kilfoy*, 122 Ill. App. 3d 276, 288, 466 N.E.2d 250, 259 (1984). That is because in such situations the "compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." *Miranda*, 384 U.S. at 478.

¶ 43    To determine whether a defendant is "in custody" for *Miranda* purposes, courts must first consider the circumstances surrounding the interrogation, and in light of those circumstances, whether a reasonable person would have felt that he was free to terminate the interrogation and leave. *Slater*, 228 Ill. 2d at 149, 886 N.E.2d at 994-95. Our supreme court has identified a number of relevant factors to be considered in determining whether a defendant's statement was made in a custodial setting, including: "(1) the location, time, length, mood, and mode of questioning; (2) the number of police officers present during the interrogation; (3) the presence or absence of family and friends of the individual; (4) any indicia of a formal arrest procedure, such as the show of weapons or force, physical restraint, booking or fingerprinting; (5) the manner by which the individual arrived at the place of questioning; and (6) the age, intelligence, and mental makeup of the accused." *Id.* at 150, 886 N.E.2d at 995. No single factor is dispositive and the court should consider all of the circumstances in the case. *People v. Beltran*, 2011 IL App (2d) 090856, ¶ 37.

¶ 44    After considering the relevant factors and all the circumstances in this case, we find that the defendant was subjected to a custodial interrogation when he informed Officer Dennis during the execution of the search warrant that he owned the handgun. A significant factor in this case is the "indicia of formal arrest procedure," including a display of weapons by the police and the physical restraint of the defendant by handcuffs. Evidence shows that Officer Dennis, along with eight other police officers, made a forced entry into the residence in executing the search warrant. The police officers had their weapons drawn. The defendant and Angelica were then searched and handcuffed. Other relevant factors show that the police officers physically moved the defendant to the living room, where he was constantly

monitored by several police officers while the search of the residence was in progress. It was in this environment that Officer Dennis questioned the defendant regarding ownership of the handgun. Under these circumstances, we find that no reasonable person would have felt free to refuse or to terminate the police questioning. Certainly, the defendant was not free to leave. Indeed, it would be unlikely that the defendant would have had the fortitude to resist police interrogation under these conditions. Thus, the court's statement that he could have chosen to remain silent misses the mark. It is much more likely that the defendant's incriminating statement to Officer Dennis was the product of "the compulsion inherent in custodial surroundings." (Internal quotation marks omitted.) *Slater*, 228 Ill. 2d at 149, 886 N.E.2d at 994-95; see *People v. Maiden*, 210 Ill. App. 3d 390, 393, 569 N.E.2d 120, 122 (1991) (holding that defendant's incriminating statement should be suppressed, where a team of police officers entered the premises by force and an officer, with his gun drawn, grabbed defendant's arm and asked " '[w]hat are you doing, what did you do, or what is the odor?' " without giving any *Miranda* warnings).

¶ 45       Moreover, we find unpersuasive the State's claims that the defendant was not in custody for the purposes of *Miranda* at the time of questioning, where the cases relied on by the State in support of this argument did not involve defendants who were handcuffed by the police at the time of questioning. See *Beltran*, 2011 IL App (2d) 090856; *People v. Havlin*, 409 Ill. App. 3d 427 (2011); *People v. Vasquez*, 393 Ill. App. 3d 185 (2009). After filing its brief and supporting authority, in an "emergency motion to cite additional authority," the State argued that our supreme court's recent decision in *People v. Colyar*, 2012 IL 111835, supported the notion that handcuffing the defendant for the safety of the officers in the case at bar did not constitute "custody" under *Miranda*. At issue in *Colyar* was whether police officers' observation of a bullet in plain view inside a vehicle justified the officers' subsequent actions in ordering the occupants out of the vehicle, handcuffing them and searching the occupants and the vehicle. *Id.* ¶¶ 9, 10, 53. On appeal, the *Colyar* defendant argued that he was unlawfully seized by the police officers in violation of his fourth amendment rights. *Id.* ¶ 30. In holding that the defendant's fourth amendment rights were not violated, the *Colyar* court found that the police officers, having seen a bullet inside the vehicle in plain view, could reasonably suspect that their safety was in danger and could reasonably order the passengers out of the vehicle and search them for weapons. *Id.* ¶¶ 42-45. The *Colyar* court further found that handcuffing the defendant and the other occupants was reasonable because the police officers were outnumbered, it was dusk, and the police could reasonably suspect that some of the car occupants possessed a gun or would be able to access a gun inside the vehicle if they were not secured by handcuffs. *Id.* ¶ 47. We find *Colyar*, in which the facts did not give rise to any *Miranda* concerns, to be inapposite to the case at bar. The defendant here was handcuffed having been previously searched by the officers and was surrounded by armed police. There was no question of officer safety at the point in time when the interrogation as to gun ownership occurred. As the defendant points out, the sole and obvious purpose of the question was to elicit information which could and would be used against him later. Unlike *Colyar*, the instant case does not concern an issue of the defendant's fourth amendment rights to be free from unreasonable search and seizure, nor does the defendant at bar claim that he was unlawfully seized. Rather, at issue here is whether a reasonable person under the

circumstances would have felt free to terminate the police questioning and leave. We answer that in the negative. Therefore, we find that the defendant was in custody for the purposes of *Miranda* at the time Officer Dennis posed his question at the residence regarding the ownership of the handgun.

¶ 46      In analyzing whether the facts of this case fit within the public safety exception to *Miranda*, we find that it does not. Rather, we find that the defendant was subjected to "interrogation" for the purposes of *Miranda*. In *United States v. Newton*, 369 F.3d 659 (2d Cir. 2004), the defendant was on parole from a previous felony conviction when his parole officer received a tip from the defendant's mother that the defendant kept a gun in a shoe box in the apartment they shared and that the defendant had threatened her and her husband. *Newton*, 369 F.3d at 663. Parole officers, along with three city police officers, knocked on the door of the defendant's home and the defendant opened the door. *Id.* A parole officer then asked the defendant to step into the hallway, where he handcuffed the defendant without advising him of his *Miranda* rights. *Id.* While restrained, defendant was asked by another parole officer whether he had any "contraband" in the house, to which the defendant responded by motioning in the direction of a nearby table and stating " 'only what is in the box.' " *Id.* Thereafter, an automatic firearm was recovered from the box and, upon further questioning, the defendant informed the officers that the firearm was for "protection." *Id.* The *Newton* court found that the defendant's statements in response to the parole officer's initial question regarding "contraband" in the house was admissible under the public safety exception to *Miranda*. *Id.* at 679. However, the *Newton* court found that the defendant's response to the officer's further questioning regarding why he owned the firearm, *after it had been recovered from the box*, was not admissible under the public safety exception. *Id.* at 679-80.

¶ 47      We find *Newton* to be instructive. While the defendant was handcuffed and seated in the living room with other armed officers nearby, Officer Dennis recovered the handgun from the bedroom and asked, "whose gun is this?" The defendant then informed Officer Dennis that he owned the handgun. We find such questioning to constitute custodial interrogation under *Miranda*, where Officer Dennis's inquiry was made *after* the handgun had already been recovered and there was no safety risk to the police officers. Further, the type of question posed by Officer Dennis was not merely general on-the-scene questioning regarding the facts of the crime, where it neither aided the police in locating the weapon nor aided them in executing the search warrant. Rather, such questioning was "reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Thus, we find that the defendant's initial incriminating statement to the police at the apartment was obtained in violation of *Miranda*. Therefore, we hold that the trial court erred in denying the defendant's motion to suppress as to the initial inculpatory statement.

¶ 48      Despite the trial court's error in denying the defendant's motion to suppress his incriminating statement in response to Officer Dennis's question at the residence, we find the error to be harmless where the defendant subsequently made a second incriminating statement regarding his ownership of the handgun *after* he was advised of his *Miranda* rights at the police station. In that second statement, the defendant was more effusive in giving details regarding where he had obtained the handgun and the length of time it had been in his

possession.

¶ 49 The defendant argues that, had the pre-*Miranda* statement been suppressed, his post-*Miranda* statements at the police station would have been suppressed as well because Officer Dennis deliberately employed a "question first, warn later" interrogation tactic designed to first obtain an incriminating statement from the defendant, after which *Miranda* warnings were given and then a second confession was obtained. See *Missouri v. Seibert*, 542 U.S. 600, 617 (2004) (question first, warn later technique utilized by the officer rendered the resulting statement inadmissible). We reject this contention. Even if Officer Dennis's conduct at the apartment constituted a deliberate employment of the impermissible "question first, warn later" interrogation strategy, we find that the substantial break in time (almost three hours) between the pre-*Miranda* question posed by Officer Dennis and the subsequent transport of the defendant to the police station where he was properly Mirandized sufficiently served as a "curative measure" to allow the defendant " 'to distinguish the two contexts and appreciate that the interrogation has taken a new turn.' " *People v. Lopez*, 229 Ill. 2d 322, 360-61, 892 N.E.2d 1047, 1069 (2008) (quoting *Seibert*, 542 U.S. at 622). "[W]e must first determine whether the detectives deliberately used a question first, warn later technique when interrogating defendant. If there is no evidence to support a finding of deliberateness on the part of the detectives, our *Seibert* analysis ends. If there is evidence to support a finding of deliberateness, then we must consider whether curative measures were taken, such as substantial break in time and circumstances between the statements ***." *Id.* Thus, we find the defendant's argument to be without merit.

¶ 50 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 51 Affirmed.