2023 IL App (1st) 220571-U

No. 1-22-0571

Order filed June 28, 2023

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 10809 (02) |
| | ) | |
| COREY BYRD, | ) | Honorable |
| | ) | Timothy J. Joyce, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE REYES delivered the judgment of the court.
Presiding Justice McBride and Justice Burke concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We reverse defendant's conviction for unlawful use or possession of a weapon by a felon (UUWF) because the State failed to establish the *corpus delicti* of the offense. We remand the matter for the trial court to vacate the findings of guilt for the other firearm offenses that merged into that UUWF count.

¶ 2     Following a bench trial, defendant Corey Byrd was found guilty of multiple unlawful use or possession of a weapon by a felon (UUWF) offenses and violation of the Firearm Owners Identification Card Act (FOID Act). The court merged the counts into one count of UUWF (720

ILCS 5/24-1.1(a) (West 2018)) and sentenced defendant to four years' imprisonment. On appeal, defendant argues that the State failed to prove the *corpus delicti* of UUWF or that he had constructive possession of a firearm found in the residence where he was arrested. We reverse defendant's conviction for UUWF and remand the matter to the trial court to vacate the guilty findings for the merged counts.

¶ 3 During the execution of a search warrant, police recovered firearms, ammunition, and cannabis from a home where defendant and his brother, Cortez Byrd, were present.[1] Defendant was charged with three counts of UUWF predicated on his possession of "any firearm," 5.56-caliber ammunition, and .223-caliber ammunition (counts XII, XIII, and XIV, respectively); one count of violation of the FOID Act (count XV); and two counts of possession of cannabis with intent to deliver (counts XVI and XVII). Cortez was charged in the same indictment with offenses arising from the items police recovered from the second-floor attic of the residence. Defendant and Cortez were tried in a joint bench trial.

¶ 4 Chicago police officer Cesar Guerrero testified that around 7:30 a.m. on June 27, 2018, he helped execute a search warrant on a single-family residence on the 8700 block of South Ada Street in Chicago (Ada residence). Guerrero entered the home and went directly to the basement, where he saw defendant with a woman and detained them. In the basement, 10 to 15 feet from defendant, Guerrero recovered a black nylon rifle case containing an AR-15 assault rifle, an empty magazine and another that contained live ammunition, and a tripod attachment for the rifle.

---

[1] As Cortez Byrd shares the same last name as defendant, we will refer to Cortez by his first name. Cortez is not a party to this appeal.

Another officer, Officer Hardy, recovered multiple boxes of .223-caliber rifle rounds in the basement.

¶ 5       On cross-examination, Guerrero stated that the residence had a basement, a first floor, and an attic.[2] Guerrero did not see defendant or Cortez engaged in narcotics activity. The case for the assault rifle had no indicia of ownership and was found inside a wall in a storage room. Guerrero did not know when it was placed there or by whom. Hardy found the boxes of ammunition on a shelf in the same storage room. The ammunition also lacked identifying information, and Guerrero did not see who placed it there. Guerrero did not recover proof of residence for defendant or Cortez from the basement. Guerrero further testified that none of the items recovered from the basement yielded fingerprints.

¶ 6       On examination by the court, Guerrero testified that the officers recovered 38 boxes of rifle rounds each containing 20 bullets. The ammunition fit the rifle recovered in the basement. The basement contained three rooms: a common area, a small room adjacent to the common area, and a "very small" room where Guerrero recovered the rifle. Defendant was in the common area.

¶ 7       On recross examination, Guerrero stated that the "storage locker" from which the items were recovered had a shut door which was covered by a mirror. Guerrero never saw defendant discard or conceal anything with regard to the storage area.

¶ 8       Chicago police officer Francisco Gonzalez testified that he recovered a loaded blue steel semiautomatic handgun from a nightstand next to the bed in a first-floor bedroom of the residence.

¶ 9       On cross-examination, Gonzalez stated that a man opened the door to the residence when the officers arrived. Gonzalez did not see defendant or Cortez entering or exiting the bedroom.

_____

[2] Throughout the report of proceedings, the attic is also referred to as the second floor.

Gonzalez did not know who placed the firearm on the nightstand, and the firearm did not have any indicia of ownership or fingerprints. Gonzalez did not recover any items with defendant's or Cortez's names from the bedroom.

¶ 10   Chicago police detective Daniel Fava testified that he searched the upstairs of the residence while executing the search warrant. The second floor had a common area with a bedsheet or curtain in front of a connected bedroom. A second bedroom was connected to the first bedroom, and only accessible through it. A third room, situated at the front of the second floor but only accessible through the second bedroom, resembled a "very small" closet. During Fava's testimony, he discussed several photographs of the residence that were published, included in the record on appeal, and reviewed by this court.

¶ 11   Fava observed Cortez walking from the second upstairs bedroom. After Cortez was detained, Fava cleared the rest of the upstairs; no one else was present. In the "front area," situated past the second bedroom, Fava observed a "false compartment" in the floor. A photograph of the front area depicts a room with green carpeting and a wooden box on the floor.

¶ 12   In the first bedroom, Fava observed a small, knotted bag containing pills, later determined to be Oxycodone, and cannabis in plain view on a nightstand. In the closet of the first bedroom, Fava peeled back the carpet and discovered another false compartment with knotted bags of cannabis. Also in the first bedroom, Fava discovered a third hidden compartment underneath a loose floorboard; it held two Glock semiautomatic pistols with extended magazines and more cannabis. One pistol contained 9-millimeter rounds. The other pistol, which contained .45-caliber rounds, had its serial number defaced. Fava also discovered "a significant amount of ammunition" in boxes and magazines in the same compartment.

¶ 13 Photographs depict the first bedroom and closet, each with a rectangular hole cut in the floor with a wooden "lid," and the contents of the compartments. The photograph of the wooden compartment in the closet shows several knotted bags inside. The photograph of the wooden compartment in the bedroom shows a firearm, clear plastic bag containing a green substance, and a blue tote bag inside. A closeup photograph of the blue tote bag shows that it contains another firearm and multiple boxes of ammunition.

¶ 14 In the second bedroom, beneath the carpet under a TV stand, Fava observed a fourth hidden compartment with three more loaded firearms and ammunition. Photographs depict the second bedroom, TV stand, and rectangular wooden compartment in the floor underneath the TV stand. The compartment contained three firearms, magazines, and two plastic bags containing multiple boxes of ammunition.

¶ 15 On cross-examination, Fava stated that, during the search, other people were in the residence besides defendant and Cortez, but he did not recall how many were present. The recovered contraband, including firearms, ammunition, and drugs, had no identifiers of ownership or proof of residency.

¶ 16 Chicago police officer Xavier Chism testified that he recovered defendant's Illinois identification card on the first floor dining room table. Chism believed the address on the identification card was the Ada residence. Defendant was arrested and Mirandized. Defendant subsequently stated "[t]hat he couldn't believe *** that [they] found the gun in the wall."

¶ 17 On cross-examination, Chism stated that the identification card was photographed. Defense counsel showed Chism a photograph of an identification card, and Chism agreed that the identification had an address on 102nd Street, not the address of the Ada residence. Chism stated

that he was mistaken about the address "if that's the only ID that was recovered," although he did not know "how many" were recovered and did not have a record of another identification card. The identification card had an expiration date of October 5, 2019, and was valid at the time of the search. Chism agreed that the only item inventoried with defendant's name was the state identification card displaying the 102nd Street address. Chism authored the arrest report, and agreed that defendant's statement was not written in the report. Chism did not recall his "exact questions" to defendant, but agreed that defendant did not admit that the firearm discovered in the wall was his.

¶ 18    A photograph of defendant's identification card is contained in the record and has been viewed by this court. It shows an address on 102nd Street, not the Ada Street residence.

¶ 19    On redirect examination, Chism testified that the arrest report was a preliminary report, and the case report, generated afterward, is more detailed. According to Chism, the case report describes his conversation with defendant and defendant's statement about the weapon.

¶ 20    The State introduced a stipulation that defendant did not have a valid Firearm Owner's Identification (FOID) card and was not eligible for one. At the time of the search, defendant had a prior conviction for possession of cannabis with intent to deliver. The stipulation further provided that the recovered firearms were not submitted for fingerprint analysis. The State also introduced a stipulation that forensic scientist Adrienne Hirsch would testify that she analyzed three items inventoried in the case and determined they tested positive for 201, 448.5, and 14.8 grams of cannabis.

¶ 21     The court granted defense counsel's motion for a directed finding regarding the two charges for possession of cannabis with intent to deliver.[3]

¶ 22     In closing, defense counsel adopted the argument she made on the motion for a directed finding. She added that the State did not establish that defendant had exclusive control over the contraband recovered from the basement since none of the items had identifying information and the only alleged proof of defendant's residency was an identification card with a different address. Further, defense counsel asserted that defendant's statement expressing his disbelief that the police found a firearm in the wall was not an admission that the firearm was his.

¶ 23     The court found defendant guilty of all UUWF counts and of violation of the FOID Act. The court found the officers were credible regarding the discovery of the items and the statement defendant made after he was Mirandized. The court found that defendant's statement that he could not believe the officers "found the gun in the wall" showed that he knew about the AR-15, which was recovered from the basement with an "extraordinary amount of ammunition" and a tripod to be used with the firearm. The court opined that the statement showed that not only did defendant know about the existence of the firearm, he had control over it "by virtue of his knowledge and by virtue of his presence in the basement at the time the police made their entry."

¶ 24     Defendant filed a motion for a new trial, arguing that the State failed to prove him guilty beyond a reasonable doubt. At a hearing, defense counsel argued that officers recovered a firearm from inside the wall of a storage room in the basement where defendant was sitting with other people. Further, the State did not establish proof of defendant's residency because the recovered

_____

[3] Despite the court acquitting defendant of the two charges for possession of cannabis with intent to deliver, the criminal disposition sheet shows a finding of guilty on both counts.

identification card displayed a different address, and the State did not provide any other proof of residence. Lastly, defendant's purported statement to Chism did not establish ownership over the recovered firearm, was ambiguous, and was the only connection between defendant and the recovered firearm. The court denied the motion, commenting that defendant's statement was an acknowledgment "and a revelation by him that he knew the gun was there, he had knowledge of the gun and control over it, and the 300 rounds of ammunition that were with that gun, an AR 15, along with a tripod."

¶ 25    After a hearing, the court imposed four years' imprisonment on the UUWF count predicated on knowingly possessing a firearm after having been convicted of a felony.[4] Defendant did not file a motion to reconsider sentence. He timely appealed.

¶ 26    On appeal, defendant argues his UUWF conviction should be reversed as the State failed to prove the *corpus delicti* of UUWF because the only evidence that he possessed the firearm hidden in the basement wall was his own "ambiguous" statement. He argues the State failed to prove beyond a reasonable doubt that he constructively possessed the firearm.

¶ 27    The standard of review for a challenge to the sufficiency of the evidence is "whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *People v. Belknap*, 2014 IL 117094, ¶ 67. The trier of fact resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts.

---

[4] The trial court did not address the merger of counts at the sentencing hearing, but the mittimus includes a notation stating, "ALL OTHER COUNTS MERGE." Similarly, the court's "order entered" disposition sheet includes a notation stating, "All other cts merge."

*People v. Brown*, 2013 IL 114196, ¶ 48. Accordingly, this court will not substitute its judgment for that of the trier of fact on the weight of the evidence or credibility of witnesses. *Id.*

¶ 28    In weighing the evidence "the trier of fact is not required to disregard inferences which flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." (Internal quotation marks omitted.) *People v. Hardman*, 2017 IL 121453, ¶ 37. A reviewing court must allow all reasonable inferences from the record in favor of the prosecution (*People v. Cunningham*, 212 Ill. 2d 274, 280 (2004)) and will not reverse a conviction unless the evidence is "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt" ((internal quotation marks omitted) *People v. Jackson*, 232 Ill. 2d 246, 281 (2009)).

¶ 29    The *corpus delicti* of an offense is "simply the commission of a crime," and the State must prove that proposition along with the identity of the person who committed the offense. *People v. Lara*, 2012 IL 112370, ¶ 17. The *corpus delicti*, generally, "cannot be proven by a defendant's admission, confession, or out-of-court statement alone." *Id*. The State must provide independent corroborating evidence when a defendant's confession is part of the *corpus delicti* proof, but this independent evidence need only tend to show the commission of a crime and need not be so strong that it alone proves the commission of the charged offense beyond a reasonable doubt. *Id*. ¶¶ 17-18. It is sufficient if the evidence connects the defendant with the crime. *Id*. ¶ 44.

¶ 30    To sustain defendant's conviction for UUWF as charged, the State had to prove beyond a reasonable doubt that he possessed a firearm after having been convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2018). Defendant only contests whether the State proved he possessed a firearm.

¶ 31 Possession of contraband may be actual or constructive. *People v. McCurine*, 2019 IL App (1st) 160817, ¶ 21. Actual possession is proved where the evidence shows the defendant "exercised some form of dominion" over the item, "such as trying to conceal it or throwing it away." *People v. Love*, 404 Ill. App. 3d 784, 788 (2010). Where, as here, there is no actual possession, the State may establish constructive possession where the defendant (1) had knowledge of the presence of the contraband and (2) exercised immediate and exclusive control over the area where it was found. *McCurine*, 2019 IL App (1st) 160817, ¶ 22. "Because possession is often difficult to prove directly, proving possession frequently rests upon circumstantial evidence." *Love*, 404 Ill. App. 3d at 788.

¶ 32 "Knowledge may be shown by evidence of a defendant's acts, declarations, or conduct from which it can be inferred that he knew the contraband existed in the place where it was found." *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. Habitation in the premises where the contraband was discovered is sufficient evidence of control to establish constructive possession. *People v. Cunningham*, 309 Ill. App. 3d 824, 828 (1999). "Where there is no evidence that the defendant controls the premises, proof of mere presence, even combined with [the] defendant's knowledge of the presence of [contraband], will not support a finding of constructive possession unless there is other circumstantial evidence of [the] defendant's control over the contraband." *People v. Tates*, 2016 IL App (1st) 140619, ¶ 20. Constructive possession is not diminished by other individuals' access to the contraband. *People v. Givens*, 237 Ill. 2d 311, 338 (2010). When the relationship of other individuals to the contraband is sufficiently close to constitute possession, possession over the contraband may be joint. *People v. Ingram*, 389 Ill. App. 3d 897, 901 (2009).

¶ 33 Here, even viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in favor of a finding of guilt (*People v. Galarza*, 2023 IL 127678, ¶ 35), we

hold that the State presented insufficient corroborating evidence to establish the *corpus delicti* of the offense, defendant's constructive possession of a firearm. Defendant was found in the basement 10 to 15 feet away from the storage room where police recovered a rifle and ammunition inside a wall. From defendant's statement to Officer Chism "[t]hat he couldn't believe *** that [police] found the gun in the wall," it is a reasonable inference that defendant knew the contraband was in the wall. See *Spencer*, 2012 IL App (1st) 102094, ¶ 17 (a defendant's declaration "from which it can be inferred that he knew the contraband existed in the place where it was found" may show knowledge).

¶ 34    However, defendant's only connection to the firearm and ammunition, other than his own statement, was his presence in the basement where they were recovered. This alone is insufficient to demonstrate that he had knowledge of the contraband and exercised immediate and exclusive control over the area where it was found. Defendant was not alone in the basement during the execution of the search warrant, and the firearm was hidden in the wall of the closed basement storage room covered by a mirror, not in plain view. See *People v. Walker*, 2020 IL App (1st) 162305, ¶¶ 25-26 (finding the State did not prove the *corpus delicti* of the offense where the defendant made a statement admitting to ownership of recovered ammunition but was not alone in the apartment and the ammunition was not in plain view). Further, nothing linked defendant to the residence, such as bills, clothing, or personal belongings. The only proof of residence for defendant, an identification card, was found on the first floor, not in the basement, and showed he lived at a different address. See *id.* (finding relevant the fact that officers did not recover anything linking the defendant to the residence).

¶ 35    The State nevertheless argues that it presented sufficient evidence to corroborate defendant's statement and prove his constructive possession of the firearm and ammunition. It analogizes the situation to *People v. Spencer*, 2012 IL App (1st) 102094, and *People v. Hannah*, 2013 IL App (1st) 111660. We find both cases distinguishable.

¶ 36    In *Spencer*, police officers executed a search warrant in a residence where the defendant and several other individuals were located. *Spencer*, 2012 IL App (1st) 102094, ¶ 3. The defendant fled and, after he was apprehended, stated that the officers "were going to find nothing but money." *Id*. After a search of the premises, officers discovered ammunition, money, and a plastic bag containing suspect cannabis on top of a dresser. *Id*. ¶ 4. They also discovered several items showing that the defendant lived in the house, including his identification card, a letter from the circuit court addressed to the defendant at the residence, photographs of the defendant, and a set of keys that opened the door to the residence. *Id*. Defendant then stated that "if you had my kind of money, you'd have a gun too." *Id*. The officers searched further and discovered a firearm, ammunition, and more money. *Id*. ¶ 5. The court found the defendant guilty of UUWF. *Id*. ¶ 12. We affirmed, finding that a rational trier of fact could find the defendant constructively possessed the firearm and ammunition. *Id*. ¶ 18. We also found that the recovery of the firearm was sufficient evidence to corroborate the defendant's statement for purposes of the *corpus delicti*. *Id*. ¶ 22.

¶ 37    In *Hannah*, officers executing a search warrant for a premises found the defendant sitting on a bed with a woman and child. *Hannah*, 2013 IL App (1st) 111660, ¶ 11. After searching the bedroom, officers recovered a firearm between the mattresses on the bed, as well as a pair of men's jeans and mail addressed to the woman. *Id*. The officers then asked who owned the firearm, and the defendant admitted that he did. *Id*. The court found the defendant guilty of UUWF. *Id*. ¶ 16.

We affirmed, finding that the defendant's incriminating statement, coupled with the recovered handgun which was "immediately accessible to the defendant at the time the police executed the search warrant," established the *corpus delicti* of the offense. *Id.* ¶ 29. We noted that because the defendant was seated on the bed, where the firearm was concealed between the mattresses, he had immediate control over the area where the firearm was discovered. *Id.*

¶ 38    Here, unlike in *Spencer*, the police officers found no evidence establishing that defendant was connected to the residence where the contraband was found. Rather, the only recovered proof of residence showed defendant lived at a different address than the Ada residence. Further, unlike in *Hannah*, the firearm and ammunition were not "immediately accessible" to defendant, but rather, were inside a wall of a closed storage room covered by a mirror.

¶ 39    Even taking defendant's statement that he could not believe the officers discovered the firearm in the wall in the light most favorable to the State, the State did not present sufficient corroborative evidence regarding defendant's knowledge and control over the firearm to establish the *corpus delicti* of the offense. The State, therefore, did not meet its burden of proof and the evidence was insufficient to sustain defendant's conviction for UUWF premised on possession of a firearm (count XII). See *Belknap*, 2014 IL 117094, ¶ 67. Defendant's conviction is reversed.

¶ 40    The evidence also was insufficient to support the guilty findings on the two UUWF counts premised on possession of ammunition (counts XIII and XIV) and on the violation of the FOID Act count (count XV). We note that the trial court did not sentence defendant on those counts and, instead, merged the counts in defendant's conviction for UUWF premised on possession of a firearm (count XII). Thus, we generally would not have jurisdiction to review the findings on these nonfinal unsentenced judgments. *People v. Relerford*, 2017 IL 121094, ¶ 75; *People v. Flores*, 128

Ill. 2d 66, 95 (1989) (this court's jurisdiction extends only to review of final judgments; "it is axiomatic that there is no final judgment in a criminal case until the imposition of sentence"). However, where, as here, the conviction on the sole count on which the defendant was sentenced has been reversed, we may review the unsentenced guilty findings. *People v. Neely*, 2013 IL App (1st) 120043, ¶ 14.

¶ 41 Given that the State failed to prove defendant constructively possessed a firearm, it necessarily failed to prove defendant violated the FOID Act by possessing a firearm without a valid FOID card. Similarly, given that the State failed to prove defendant's constructive possession of the firearm, it necessarily failed to prove defendant possessed the ammunition found in the same location, *i.e.*, that he possessed the ammunition underlying the merged UUWF charges.

¶ 42 Consequently, we remand the matter to the trial court to vacate the findings of guilt on the UUWF counts premised on possession of ammunition (counts XIII and XIV) and the FOID Act count (count XV). See Ill. S. Ct. R. 615(b)(2) (eff. Jan. 1, 1967).

¶ 43 For the foregoing reasons, we reverse defendant's conviction for UUWF (count XII) and remand with instructions.

¶ 44 Reversed in part and remanded in part.