2020 IL App (1st) 163401-U

FIRST DIVISION
March 23, 2020

No. 1-16-3401

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 14 CR 12596 |
| | ) | |
| | ) | |
| JOSE CUEVAS | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE PIERCE delivered the judgment of the court.
PRESIDING JUSTICE GRIFFIN and JUSTICE HYMAN concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The trial court did not err in denying defendant's motion to suppress his statements. Cause remanded for defendant to file a motion to correct sentencing errors.

¶ 2     Defendant appeals from the trial court's partial denial of his motion to suppress statements and argues that the trial court erred in denying his motion to suppress because defendant was not informed of his *Miranda* rights prior to the officer's questions.   For the following reasons, we find that the court did not err in denying defendant's motion to suppress. However, we remand to the trial court for defendant to file a motion to address sentencing errors.

¶ 3                              BACKGROUND

¶ 4      Prior to trial, defendant filed a motion to suppress statements and a motion to quash his arrest and suppress the handgun found by the police at the scene. Defendant's first motion sought to exclude a statement made to police on the basis that defendant had not been given his *Miranda* rights before he made an inculpatory statement. Defendant's second motion alleged that police lacked probable cause to arrest him and recover the evidence. A hearing on both motions was heard simultaneously. The following testimony was elicited at the hearing.

¶ 5      Chicago police Officer Pruger testified that on July 4, 2014, at about 10 p.m., he and his partner Officer Cox received a call over the radio regarding a male wearing a blue shirt and glasses firing a gun in the alley in the area of 2638 S. Avers. Officers Pruger and Cox arrived at the location about three minutes later. Two other units also responded.

¶ 6      Officers spoke with a woman at the scene who was nervous and concerned for her children. The woman stated that the person firing the gun was in the backyard of 2638 S. Avers and pointed to the residence. The officers approached the property, looked down the gangway and saw people moving around in the backyard. They then entered the yard through the gangway and Officer Pruger saw three male adults and three to five children, one of which was a small child in a car seat. Officer Pruger identified defendant as one of the adults he saw in the backyard. Defendant was wearing a blue shirt and glasses and was holding a beer.

¶ 7      When Officer Pruger saw defendant, he approached him, placed him in handcuffs and performed a protective pat down. He asked defendant whether he had been shooting a gun and where the gun was located. Based on information provided by defendant and by defendant's friend to Officer Salgado, Officer Salgado recovered a handgun in the yard. The gun was a 9-

millimeter handgun and was loaded and unsecured. Defendant was placed under arrest and informed of his *Miranda* rights.

¶ 8    The trial court held that based on the information provided to the officers over the initial radio call, and the information provided by the unknown woman at the scene, the officer's entry on the property at 2638 S. Avers was proper. In addition, the court found that the detention of defendant based on the fact that he matched the physical description provided to the officers was also proper. Finally, the court found that defendant's answer to Officer Pruger's first question, whether he had been shooting a gun, was admissible, but suppressed defendant's answer to Officer Pruger's question regarding the location of the gun.

¶ 9    At trial, Officer Salgado testified that he responded to a call of a Hispanic man wearing a blue shirt and glasses shooting a gun near 2638 South Avers. When he and other officers arrived, a woman approached Officer Pruger and had a conversation with her. After the conversation, the officers went to the backyard of 2638 South Avers and Officer Salgado saw a man matching the description of the offender that had been broadcast over the radio. Officer Salgado and Officer Pruger approached defendant and Officer Pruger asked defendant whether he had been shooting a gun. Defendant stated that he had been shooting the gun in the yard and alley, it was the Fourth of July, he was drunk, and it was a stupid idea.

¶ 10    After defendant provided this statement, Pedro Bonilla approached the officers and spoke with Officer Salgado in Spanish. Bonilla then escorted Officer Salgado into the backyard of 2615 S. Springfield. Bonilla pointed to an area near the garage and Officer Salgado observed a gun on the ground. Officer Salgado recovered the .9-millimeter semi-automatic gun. It was loaded with six live rounds. There was an empty .9-millimeter magazine lying next to the gun.

Officer Salgado then walked back and informed Officer Pruger that he had recovered a gun. Defendant was placed in custody.

¶ 11    The officers recovered spent shell casings form the yard at 2638 South Avers.  Officer Salgado observed that the casings were the same caliber and brand as the casings that were loaded in the gun he recovered.

¶ 12    Defendant was *Mirandized* at the police station.  Defendant agreed to speak to the police and stated that he knew he messed up, he was drunk and should not have been shooting the gun. The gun was sent to the Illinois State Police crime lab but was not tested for fingerprints or checked to see if the recovered shell casings matched.

¶ 13    Ivette Garcia testified that she was at a relative's house at 2640 South Avers on the night of the incident.  She and her family were having a cookout in the backyard.  There were about five adults and ten children present.  At about 10 p.m., she was in the backyard when she heard two gun shots close by, from the north side of the house.

¶ 14    Garcia went to the bathroom and came back out a few minutes later.  She was standing on the back porch and saw a man holding a gun in the yard next door.  She had never seen the man before.  He was wearing a blue shirt and glasses.  Garcia identified defendant in court as the man with the gun.  She testified that she looked at him for about 20 seconds and was 12 to 20 feet away.  She could see him clearly over the fence.  Garcia stated that the gun was black but did not know what caliber it was or if it was real.

¶ 15    After seeing the man with the gun, Garcia called 911 because there were a lot of children outside in the yard.  She heard one more gunshot after she called 911.  Police arrived shortly thereafter but Garcia did not speak with them.

¶ 16    The parties stipulated that defendant had a conviction for aggravated driving under the influence of alcohol and did not have a valid FOID card or conceal carry license.

¶ 17    The court found defendant guilty of UUWF.  Defendant was sentenced to two years' imprisonment.

¶ 18                                              ANALYSIS

¶ 19    Defendant argues that the trial court erred in denying his motion to suppress his statement to police because Officer Pruger's question regarding whether defendant had been firing a gun amounted to a custodial interrogation in violation of *Miranda*. The focus of defendant's argument is that he was in custody at the time he answered Officer Pruger's questions.  The State does not dispute that defendant was in custody at the time he made statement to the police but argues that the public safety exception to *Miranda* applies here.

¶ 20    The standard of review applicable to a ruling on a motion to quash an arrest and suppress evidence is twofold. The trial court's factual findings and credibility determinations are upheld unless they are against the manifest weight of the evidence. *People v. Jones*, 215 Ill. 2d 261, 267-68 (2005).  A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *People v. Rockey,* 322 Ill. App. 832, 836 (2001).  After the trial court's factual findings are reviewed, the court's ultimate legal rulings are reviewed *de novo*. *Jones*, 215 Ill. 2d at 268. We may consider the testimony presented at trial as well as the testimony at the suppression hearing when reviewing the trial court's ruling on a motion to suppress. *People v. Slater*, 228 Ill. 2d 137, 149 (2008).

¶ 21    Under *Miranda v. Arizona*, 384 U.S. 436, 454 (1966), once a suspect is in custody, his statements in response to custodial interrogation are inadmissible unless he has first been warned of his constitutional rights, including the right to remain silent and to be represented by counsel Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id*. The ultimate inquiry is whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125 (1983).

¶ 22    The State argues that the public safety exception to *Miranda* applies here.  The public safety exception to *Miranda* was outlined in *New York v. Quarles*, 467 U.S. 649 (1984).  In *Quarles*, two police officers were approached by a woman who told them that she had just been raped.  She provided a description of the offender and told officers that he was armed.  One of the officers followed the offender into a nearby store.  Once inside the store, the officer saw a man matching the description provided and upon seeing the officer, the offender turned and ran to the rear of the store.  The offender was eventually detained.  The officers frisked the defendant and discovered that the offender was wearing an empty shoulder holster.  After he handcuffed the offender, the officer asked the offender where the gun was.  The offender stated that "the gun is over there," nodding at an empty carton nearby.  The officer retrieved a loaded gun from the carton, placed the offender under arrest, and read him his *Miranda* rights.  *Id*.

¶ 23    At trial, the defendant challenged his statement to police that "the gun is over there." The Court found that public safety exception to *Miranda* existed and held that a police officer may ask limited questions to a suspect without first giving him *Miranda* warnings, if the officer finds

that it is reasonably necessary "to secure [his] own safety or the safety of the public." *Id* at 655. The Court held that the defendant's statement and the gun were admissible despite the officer's failure to provide *Miranda* warnings prior to questioning the defendant about the gun. *Id*. at 659. The Court noted that the gun posed a danger to public safety because a customer or an employee may have come upon the gun in the busy store. *Id*. at 657. The police officer asked about the gun immediately after having apprehended the defendant and was concerned about ascertaining the whereabouts of a weapon that he believed the defendant had just removed from the holster and discarded in the store. The Court described the exigent circumstances under which the public safety exception would apply as those where the police are required to make a decision "in a matter of seconds," "in a kaleidoscopic situation" where "spontaneity * * * is necessarily the order of the day." *Id.* at 656-58. Requiring the police to given *Miranda* warnings under such circumstances would put the police in the untenable position of having to make a decision as to whether to ask the question without the warnings and render the evidence inadmissible, or give the warnings and possibly prevent the defendant from giving the information needed to neutralize a volatile situation. *Id*. at 657–58.

¶ 24    Illinois courts have recognized the public safety exception. See *People v. Williams*, 173 Ill.2d 48, 77 (1996); *People v. Hannah*, 2013 IL App (1st) 111660, ¶ 46. In *Williams*, the defendant was handcuffed and searched pursuant to an arrest warrant for a recent shooting. The police asked the defendant whether he had any weapons "on him." Defendant responded that he had a gun in the attic. *Williams*, 173 Ill. 2d at 75.

¶ 25    The *Williams* court affirmed the denial of his motion to suppress, citing the public interest exception set forth in *Quarles*. The court noted that "the need for answers to questions in

7

a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." *Id.* at 77 (citing *Quarles*, 467 U.S. at 657). *C.f., Hannah*, 2013 IL App (1st) 111660, ¶ 46 (finding that officer's questioning of the defendant did not fall within the exception but amounted to illicit interrogation, when officer had already recovered the weapon and then asked handcuffed suspect "whose gun is this?").

¶ 26    Contrary to defendant's argument that the question of whether defendant was shooting a gun was "not necessary to protect further danger to the public," we find that the public interest exception to *Miranda* does apply in this case where Officer Pruger's question was necessary to protect further danger to the public.  In this case, officers entered the backyard of 2638 S. Avers, with a description of defendant, which they received over the radio, as well as information they received from the woman they encountered in the alley.  Officers identified defendant as one of the adults in the backyard as matching the description of the person they received over the police radio.  After defendant was placed in handcuffs, Officer Pruger asked defendant whether he had been shooting a gun.  Defendant stated that he had been shooting the gun in the yard and alley, it was the Fourth of July, he was drunk, and it was a stupid idea.

¶ 27    In the case at bar, the officers responded to the call of an active shooter in a place where there were many people present celebrating the holiday, including small children.  Based on the reports received, there existed an immediate need to neutralize the situation, secure the area and locate the shooter and the weapon.  Officer Prugers's question to defendant if he was the person shooting the gun was necessary to detain the shooter and safeguard the bystanders.  The public

8

safety exception clearly applied here. We find that the trial court did not err in denying defendant's motion to suppress defendant's initial statement to the police.

¶ 28 Defendant also argues that the trial court improperly imposed $619 in fines, fees and costs that should be corrected. Defendant concedes that he did not challenge these assessments in the trial court.

¶ 29 This issue governed by Illinois Supreme Court Rule 472 (eff. Mar. 1, 2019), which was adopted after defendant filed his brief. Rule 472 sets forth the procedure in criminal cases for correcting certain sentencing errors, including "[e]rrors in the imposition or calculation of fines, fees, and assessments or costs," "[e]rrors in the application of per diem credit against fines," "[e]rrors in the calculation of presentence custody credit," and "[c]lerical errors in the written sentencing order." Ill. S. Ct. R. 472(a) (eff. Mar. 1, 2019). The rule provides that, in criminal cases, "the circuit court retains jurisdiction to correct" the enumerated errors "at any time following judgment ***, including during the pendency of an appeal." Ill. S. Ct. R. 472(a) (eff. Mar. 1, 2019). Additionally, "[n]o appeal may be taken" on the ground of any of the sentencing errors enumerated in the rule "unless such alleged error has first been raised in the circuit court." Ill. S. Ct. R. 472(c) (eff. Mar. 1, 2019).

¶ 30 More recently, our supreme court amended Rule 472 by adding paragraph (e) (Ill. S. Ct. R. 472(e) (eff. May 17, 2019)), which provides: "In all criminal cases pending on appeal as of March 1, 2019, or appeals filed thereafter in which a party has attempted to raise sentencing errors covered by this rule for the first time on appeal, the reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule."

¶ 31 Defendant's appeal was pending on March 1, 2019. Thus, pursuant to the provisions of

Rule 472, we remand to allow defendant the opportunity to file a motion to correct any sentencing errors.

¶ 32                                CONCLUSION

¶ 33    In light of the foregoing, we affirm the trial court's denial of defendant's motion to suppress but remand to the trial court to allow defendant the opportunity to file a motion to correct any sentencing errors.

¶ 34    Affirmed; remanded for defendant to file a motion for review of his sentencing claims in the trial court.