2020 IL App (1st) 172181

FIFTH DIVISION
SEPTEMBER 30, 2020

1-17-2181

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 12 CR 11426 |
| | ) | |
| GREGORY MILAN, | ) | Honorable |
| | ) | Joan Margaret O'Brien, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Hoffman concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant-appellant Gregory Milan appeals his April 2017 conviction for unlawful use of a weapon by a felon, for which he was sentenced to six years' imprisonment. On appeal, the defendant argues that (1) the evidence was insufficient to convict him because there was no independent corroboration of his confession and (2) trial counsel was ineffective for failing to move to suppress the evidence recovered during the search of his mother's home. For the reasons that follow, we reverse the judgment of the circuit court of Cook County.

¶ 2                          BACKGROUND

¶ 3    The following evidence was adduced at trial. On June 8, 2012, Chicago police sergeant Anthony Schulz received a dispatch indicating that shots had been fired at 640 East 90th Place in Chicago. Chicago police officer Guy Habiak also received a transmission over radio alerting him to someone with a gun at that location. When Officer Habiak arrived, he spoke to unnamed

civilians outside the home, from whom he learned that a shot was possibly fired and that the incident was "domestic related."

¶ 4    For his part, when Sergeant Schulz arrived at the single-family residence, he spoke to Anton Milan and Gregory Milan Jr., who were standing outside the home. Based on his conversation with them (which was not admitted for its truth), he knocked on the door of the home looking for a person armed with a gun. The defendant, who was unarmed, answered the door, and he was detained while Sergeant Schulz and other responding officers conducted a search of the house. During their search, the officers discovered a bullet hole in the wall of the living room, a holster on top of a television, and a .32-caliber revolver in a basement crawl space. The revolver had one spent round and three live rounds. At trial, photographs were introduced of the bullet hole, the holster, and the crawl space, but there were no photographs of the gun, and the gun itself was not offered for admission into evidence. The officers did not find anyone else in the house.

¶ 5    The defendant was taken into custody and transported to the police station, where Sergeant Schulz gave him *Miranda* warnings (see *Miranda v. Arizona*, 384 U.S. 436 (1966). According to Sergeant Schulz, the defendant then told him that he had retrieved a gun from the top of a kitchen cabinet, pointed it at Anton Milan and Gregory Milan Jr., and told them to "get the f*** away from him." Sergeant Schulz did not have this statement memorialized in writing or recorded.

¶ 6    The State then introduced into evidence a certified copy of the defendant's 2006 conviction for possession of a stolen motor vehicle.

¶ 7    Following the denial of the defendant's motion for a directed verdict, the defendant's mother, Earnestnell Milan, testified on his behalf. Ms. Milan testified that, in June 2012, she was living alone at 640 East 90th Place. The defendant had previously lived with her in the basement but had moved out three or four years earlier. On June 8, 2012, the defendant was living in

Danville, Illinois, but had stopped to visit her after attending a funeral in the area. That evening, Ms. Milan saw the defendant scolding Anton Milan, the defendant's nephew, and Gregory Milan Jr., the defendant's son, for smoking marijuana in the basement of her home. The defendant told them to come upstairs, where Ms. Milan intervened and told the boys to stop smoking in her house. Ms. Milan testified that the argument was not heated and after her intervention all parties had calmed down. Ms. Milan then went to visit a friend next door. Fifteen minutes after arriving at her friend's house, she heard sirens and went outside to investigate. The police told her they were investigating a disturbance at her house and proceeded to take the defendant away in handcuffs.

¶ 8    Ms. Milan testified that her late husband had a gun, which he showed her in 2002. She told him to keep it out of sight because she "can't stand" guns. Ms. Milan did not know where her husband kept the gun, and she never told the defendant a gun was in the house. She did, however, recognize the holster on top of the television set as her husband's but testified that she had not seen it on the evening of June 8, 2012.

¶ 9    With regard to the bullet hole, Ms. Milan testified that she heard gunshots in December 2011 and saw that her window had been cracked. She called the police, but they did not see any bullet holes when they searched her house. Several weeks later, she moved furniture and saw a bullet hole.

¶ 10    After hearing closing arguments, the trial court found the defendant guilty of two counts of unlawful possession of a weapon by a felon. The defendant was sentenced to the minimum six years' imprisonment.

¶ 11                                                    ANALYSIS

¶ 12    We note that we have jurisdiction to review this matter, as we allowed the defendant's late notice of appeal following sentencing. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 13    The dispositive issue on appeal is the sufficiency of the evidence. When a defendant challenges the sufficiency of the evidence, the reviewing court must consider whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48. Specifically, the State must prove two propositions beyond a reasonable doubt: (1) that a crime was committed, also known as the *corpus delicti*, and (2) that the defendant committed the crime. *People v. Underwood*, 2019 IL App (3d) 170623, ¶ 10. Importantly, a confession alone is insufficient to prove the *corpus delicti* of an offense; there must be some corroborating evidence tending to prove that a crime has been committed. *People v. Lara*, 2012 IL 112370, ¶ 17. This corroborating evidence need only *tend* to show the commission of an offense and correspond with the circumstances related in the confession. *Id.* ¶ 32. It is not necessary that the independent evidence establish that the defendant committed a crime beyond a reasonable doubt. *Id.* Rather, it is sufficient if the evidence tends to connect the defendant with a crime. *Id.* ¶ 44. In determining whether the State has met its burden, we will not substitute our judgment for that of the trier of fact, nor will we reverse a conviction unless the evidence is so improbable or unsatisfactory so as to raise a reasonable doubt of a defendant's guilt. *People v. Wright*, 2017 IL 119561, ¶ 70.

¶ 14    In order to sustain a conviction for unlawful use or possession of a weapon by a felon, the State was required to prove that the defendant "knowingly possess[ed] on or about his person" a firearm. 720 ILCS 5/24-1.1(a) (West 2012).

¶ 15    Because neither party disputes that the defendant was a convicted felon, the defendant's knowing possession of the firearm is the only element at issue in this case. Possession may be either actual or constructive. *People v. Faulkner*, 2017 IL App (1st) 132884-B, ¶ 39. In order to establish the defendant's constructive possession, the State was required to prove that (1) the defendant had knowledge of the presence of the weapon and (2) the defendant exercised immediate and exclusive control over the area where the weapon was found. *Id.* Evidence of constructive possession is almost always circumstantial. *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 23.

¶ 16    Here, the State argues that it proved the defendant both actually and constructively possessed the gun through the introduction of the defendant's confession as well as evidence independent of the confession tending to show that the defendant committed the crime. Initially, the State points to Officer Habiak and Sergeant Schulz's testimony that they responded to 640 East 90th Place to look for a person armed with a gun as independent corroborating evidence. But Sergeant Schulz learned of this information from nontestifying witnesses Anton Milan and Gregory Milan Jr., and Officer Habiak from an unidentified source over the radio. As such, in response to the defendant's objection, the trial court (correctly) ruled that this testimony was hearsay and could not be considered for its truth. See *People v. Risper*, 2015 IL App (1st) 130993, ¶ 35 (describing hearsay as an out of court statement offered to prove the truth of the matter asserted that is ordinarily inadmissible due to its lack of reliability). Instead, it was offered only to explain the actions of the police; *i.e.*, why they proceeded to that location. Hearsay evidence does not meet the criteria for independent corroborating evidence required to prove the *corpus delicti* of an offense. See *People v. Harris*, 2012 IL App (1st) 100077, ¶ 26 (hearsay statement to officer insufficient to corroborate defendant's confession so as to prove *corpus delicti*); see also *People v. Lesure*, 271 Ill. App. 3d 679, 682 (1995) (same).

¶ 17    The State also relies on the fact that the defendant was in the house where a gun was found (in a basement crawlspace), a bullet hole was in a wall, and a holster was on top of the television. But the defendant's presence in a house where contraband was found does not necessarily prove that the defendant possessed a gun. Significantly, there was no evidence that the defendant *lived* in the house where the gun and holster were recovered. Indeed, the evidence was to the contrary: the defendant's mother testified that he lived in Danville, Illinois, and was visiting briefly while in town for a funeral. Moreover, there was uncontradicted evidence that the gun and the holster belonged to the defendant's mother's late husband. Finally, the gun was not in plain view but inside a basement crawl space. Taken together, this evidence neither corroborates the defendant's confession nor tends to show that the defendant possessed the gun, either actually or constructively. See *People v. Walker*, 2020 IL App (1st) 162305, ¶¶ 25-26 (finding that defendant's mere presence in apartment where bullets were recovered was insufficient to corroborate defendant's confession that the bullets were his where defendant was in a different room from where bullets were found, bullets were out of sight in a drawer, and no evidence connected defendant to residence).

¶ 18    In the absence of independent evidence to corroborate the defendant's confession, we find the evidence insufficient to sustain the defendant's conviction, and we reverse the judgment of the circuit court of Cook County. And because we reverse the defendant's conviction, we need not address his alternative claim of ineffective assistance of counsel.

¶ 19                                     CONCLUSION

¶ 20    The defendant's conviction for unlawful use of a weapon by a felon is reversed.

¶ 21    Reversed.

---

**No. 1-17-2181**

---

| | |
|---|---|
| **Cite as:** | *People v. Milan*, 2020 IL App (1st) 172181 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 12-CR-11426; the Hon. Joan Margaret O'Brien, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Brett C. Zeeb, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Clare Wesolik Connolly, and Lisanne P. Pugliese, Assistant State's Attorneys, of counsel), for the People. |

---