2024 IL App (1st) 220796-U

THIRD DIVISION
March 13, 2024

No. 1-22-0796

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. YK 046 000 |
| | ) | |
| TONI ROBERTSON, | ) | Honorable |
| | ) | Eulalia V. De La Rosa, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justices D.B. Walker and Van Tine concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Affirming the defendant's conviction for driving under the influence where the State's evidence that she was in actual physical control of a motor vehicle satisfied the *corpus delicti* rule and otherwise supported her conviction.

¶ 2    Following a bench trial, defendant Toni Robertson was found guilty of driving under the influence of alcohol (DUI) with a blood alcohol concentration above 0.08 (625 ILCS 5/11-501(a)(1) (West 2018)).  Defendant contends on appeal that the State's evidence that she was in actual physical control of a motor vehicle failed to satisfy the *corpus delicti* rule.  Defendant also argues that the evidence was insufficient to prove beyond a reasonable doubt that she drove or was in actual physical possession of a motor vehicle.  The State challenges these contentions.

For the reasons discussed below, we affirm the judgment of the circuit court of Cook County.

¶ 3                                        BACKGROUND

¶ 4      Defendant was arrested and charged with improper lane usage (625 ILCS 5/11-708 (West 2018)) and three counts of driving under the influence (625 ILCS 5/11-501(a)(1), (2), (6) (West 2018)). The testimony and other evidence at trial included the following.

¶ 5                                        *Officer Chiovari*

¶ 6      Officer Chiovari[1] of the Berwyn Police Department testified that he was dispatched to a vehicle collision near Oak Park Avenue and Ogden Avenue in Berwyn at approximately 4 p.m. on October 25, 2019. When he arrived, he observed two vehicles: a Saab stopped in an eastbound lane of Ogden and a Chevrolet "pulled off to the side" facing westbound on Ogden. Both vehicles had sustained substantial front-end and driver's side damage.

¶ 7      Officer Chiovari testified that he spoke with each of the drivers. The driver of the Chevrolet – identified by Officer Chiovari as defendant – stated that the vehicles collided as each driver turned at the intersection of Oak Park and Ogden. Officer Chiovari testified that defendant's description of the collision was inconsistent with the physical placement of the vehicles.

¶ 8      Defendant stood on the sidewalk next to the Chevrolet as she spoke with Officer Chiovari. He observed that she stumbled multiple times, and her speech was slurred; he also detected the odor of alcohol. When questioned by Officer Chiovari, defendant denied that she had consumed alcohol. He asked if she would be willing to submit to standardized field sobriety tests. She agreed to a horizontal gaze nystagmus (HGN) test, which checks for alcohol consumption based on "involuntary jerking of the eyes." Defendant indicated that prior surgeries

---

[1] Officer Chiovari's first name does not appear in the record on appeal.

rendered her incapable of completing any other field sobriety tests.

¶ 9    Officer Chiovari administered an HGN test.  He testified that an HGN test generally checks for six "clues," and alcohol consumption is positively indicated if four clues are present. In this case, defendant demonstrated all six clues, including a sustained and distinct nystagmus in both eyes at maximum deviation.  At the conclusion of the HGN test, defendant was taken into custody and was transported to the police station.

¶ 10    At the station, Officer Chiovari repeated verbatim the preprinted "Warning to Motorist" form to defendant and explained the consequences of noncompliance.  He asked her to provide a breath sample; she refused.  She then complained of back pain and asked to go to the hospital. According to Officer Chiovari, defendant was under arrest for "DUI investigation" at that point. Based on his professional experience with hundreds of individuals under the influence of alcohol, Officer Chiovari testified he was "fully convinced" she was under the influence based on her poor balance, her slurred speech, and the odor of alcohol emanating from her.

¶ 11    An ambulance was called, and defendant was transported to MacNeal Hospital.  Officer Chiovari joined defendant in a room in the emergency department of the hospital, where a nurse informed defendant that she needed to collect a urine sample.  Officer Chiovari testified that defendant returned from the bathroom with a cup of liquid which was "very clear."  He asked defendant why her sample was clear, and she responded that she drinks "a lot" of water.  Officer Chiovari testified that the nurse then tested the sample, which proved to be water – not urine.

¶ 12    According to Officer Chiovari, defendant was asked to provide another urine sample and if she would be willing to submit to a "DUI kit."  Officer Chiovari informed defendant that the DUI kit would check for "anything she may be under the influence of," which results could possibly be used against her in court.  She agreed to the DUI kit and provided blood and urine

samples. Officer Chiovari subsequently took possession of the samples – which he observed being packaged and sealed by the nurse – and placed them in an evidence locker at the police station, in accordance with the police department's practice. Following her discharge from the hospital, defendant was transported back to the police station, where she refused to speak with Officer Chiovari and was placed in a holding cell pending processing.

¶ 13    During cross-examination, Officer Chiovari testified that he prepared an arrest report but was not certain why he did not also prepare an "alcohol influence report." He confirmed that his interactions with defendant were not recorded by a body-worn camera or a police vehicle dashcam. Officer Chiovari testified that he did not observe anyone inside the vehicles when he arrived at the scene, but he did view individuals standing outside the vehicles, including defendant. When questioned regarding defendant's appearance at the scene, he testified that her face was not flushed, her pupils were not dilated, and her eyes were not bloodshot or glassy.

¶ 14                    *Nurse Nicole Pettinato*

¶ 15    Nicole Pettinato (Pettinato), a registered nurse formerly employed by MacNeal Hospital, testified that she was working when defendant was brought to the emergency room, complaining of pain. While speaking with Pettinato, defendant indicated that she had been in an accident.

¶ 16    Pettinato testified that defendant's first urine sample was very cold and clear, which would be "concerning" for a body fluid sample. When Pettinato asked whether she provided an actual urine sample – as opposed to "something from the sink" – defendant responded that it was urine. Pettinato tested the sample with a litmus paper stick, which indicated that the sample "didn't necessarily match up with being a true urine sample." The sample was discarded.

¶ 17    Pettinato testified that defendant then provided urine samples for the hospital and for the DUI kit for law enforcement. Pettinato also collected a blood sample for the DUI kit. She

described labelling, sealing, and initialing the samples for the DUI kit.

¶ 18    The urine sample for the hospital (as opposed to the DUI kit) was sent for in-house drug abuse screening, which tested for certain substances – *e.g.,* barbiturates, cocaine, opiates, cannabinoids, and methadone – but not for alcohol.  The results were all negative.  Pettinato confirmed that no blood sample was taken for the hospital (as opposed to the DUI kit).

¶ 19    On cross-examination, Pettinato testified she did not record any abnormalities with defendant's eyes or any odor of alcohol.  She also had noted that defendant could walk with good coordination.  Pettinato further testified that, according to online records, defendant had prescriptions for phentermine (a weight loss medication) and alprazolam (*i.e.*, Xanax).

¶ 20                                        *Jennifer Bash*

¶ 21    Jennifer Bash (Bash) testified that she was employed by the University of Illinois at Chicago as a senior analytical forensic toxicology specialist in its Analytical Forensic Testing Laboratory.  Her responsibilities included testing biological fluids for the presence of drugs and volatiles, such as ethanol.  Bash explained that a volatile is any compound which readily evaporates at room temperatures and that ethanol is the "drinking alcohol" found in beer, wine, and liquor.  After testimony regarding her education, training, and experience, Bash was found to be an expert in the field of forensic toxicology.

¶ 22    Bash testified that she performed testing on defendant's blood and urine samples.  As to defendant's urine sample, Bash detected phentermine and alprazolam.  Over a defense objection, Bash testified that possible effects of alprazolam include drowsiness and delayed reaction times.  As to defendant's blood sample, Bash detected ethanol at a level of "0.118, plus or minus, 0.003 grams per deciliter."  Over another defense objection, Bash testified that the combination of alprazolam and ethanol could magnify or multiply the clinical effects of each compound.

¶ 23                                    *Donald Quattrocchi*

¶ 24    The sole defense witness was Donald Quattrocchi (Quattrocchi), a paramedic employed

by the Berwyn Fire Department.  He testified that on October 25, 2019, he was dispatched to the

Berwyn Police Department to pick up defendant, who had complained of lower back pain.

During standard questioning by Quattrocchi, defendant denied any drug or alcohol usage.

A patient care report which he signed did not include any observations regarding her speech or

the odor of alcohol; the report indicated that defendant's pupils were normal.

¶ 25                                *Ruling and Posttrial Matters*

¶ 26    On October 21, 2021, the circuit court issued its ruling.  The circuit court initially noted

that defendant had been charged with improper lane usage (625 ILCS 5/11-708 (West 2018)) and

with three counts of driving under the influence under subsections (a)(1), (a)(2), and (a)(6) of

section 11-501 of the Illinois Vehicle Code (625 ILCS 5/11-501 (West 2018)).  Subsection (a)(1)

provides, in part, that a person shall not drive or be in actual physical control of any vehicle

while "the alcohol concentration in the person's blood *** is 0.08 or more."  625 ILCS 5/11-

501(a)(1) (West 2018).  Subsection (a)(2) provides, in part, that a person shall not drive or be in

actual physical control of any vehicle while "under the influence of alcohol."  *Id.* § 11-501(a)(2).

Subsection (a)(6) provides, in part, that a person shall not drive or be in actual physical control of

any vehicle while "there is any amount of a drug, substance, or compound in the person's breath,

blood, other bodily substance, or urine resulting from the unlawful use or consumption of a

controlled substance listed in the Illinois Controlled Substances Act[.]"  *Id.* § 11-501(a)(6).

¶ 27    After finding defendant not guilty of improper lane usage, the circuit court made a

finding that defendant was in actual physical control of the vehicle.  The circuit court further

found that all of the witnesses testified credibly.  The circuit court observed that the paramedic

(Quattrocchi) and the nurse at the hospital (Pettinato) may not have detected the odor of alcohol since they interacted with defendant later than Officer Chiovari. As to subsection (a)(6), the circuit court found defendant not guilty; the court noted the State's failure to address the discrepancy between the results of the drug testing at the hospital versus the toxicology laboratory. The circuit court found defendant guilty as to subsection (a)(1), based on the testimony of the forensic toxicologist that defendant's blood alcohol concentration was 0.118. Defendant was found not guilty as to subsection (a)(2).

¶ 28    Defendant filed a motion to reconsider, arguing that the State failed to present evidence – other than her "confession" to Officer Chiovari at the scene – that she drove or was in physical control of a vehicle. She also contended there was no credible evidence of impairment. The circuit court denied the motion and sentenced defendant to 12 months' supervision, completion of a significant risk treatment plan, and attendance at a victim impact panel. Defendant subsequently filed this timely appeal.

¶ 29                                    ANALYSIS

¶ 30    Defendant advances two primary arguments on appeal. First, she contends the State's evidence that she was in actual physical control of a motor vehicle failed to satisfy the *corpus delicti* of the offense. Second, defendant asserts that the evidence was insufficient to prove beyond a reasonable doubt that she drove or was in actual physical control of a motor vehicle. As discussed below, these two contentions involve the same analysis.

¶ 31                          *Corpus Delicti Principles*

¶ 32    Under Illinois law, proof of an offense requires proof of two distinct facts or propositions beyond a reasonable doubt: (a) that a crime occurred, *i.e.*, the *corpus delicti*; and (b) that the crime was committed by the individual charged. *People v. Sargent*, 239 Ill. 2d 166, 183 (2010).

See also *People v. Lara*, 2012 IL 112370, ¶ 17 (noting that the "*corpus delicti* of an offense is simply the commission of a crime"); *People v. Rhoden*, 253 Ill. App. 3d 805, 811 (1993) (describing *corpus delicti* as "the body or substance of the crime which ordinarily includes the act and the criminal agency"). In other words, to obtain a valid conviction, the State must prove both the *corpus delicti* and the identity of the individual who committed the crime. *People v. Sanchez*, 2019 IL App (3d) 160643, ¶ 13.

¶ 33   The *corpus delicti* generally cannot be proven by a defendant's confession, admission, or out-of-court statement alone. *Lara*, 2012 IL 112370, ¶ 17. "Rather, where a defendant's confession is part of the proof of the *corpus delicti*, the State must also provide independent corroborating evidence." *Sanchez*, 2019 IL App (3d) 160643, ¶ 13. Accord *People v. Hannah*, 2013 IL App (1st) 111660, ¶ 26. If the confession is not corroborated by other evidence, a conviction based on the confession cannot be sustained. *Sargent*, 239 Ill. 2d at 183. The corroboration requirement "stems from a historical mistrust of extrajudicial confessions," *e.g.*, the confession could result from improper coercion or the individual's psychological issues. *Id*.

¶ 34   Under the *corpus delicti* rule, "the independent evidence need only *tend to show* the commission of a crime. It need not be so strong that it alone proves the commission of the charged offense beyond a reasonable doubt." (Emphasis in original.) *Lara*, 2012 IL 112370, ¶ 18. See also *Sargent*, 239 Ill. 2d at 183. The rule requires only that the corroborating evidence corresponds with the circumstances recited in the confession and tends to connect the defendant with the crime. *Lara*, 2012 IL 112370, ¶ 51. "The independent evidence need not precisely align with the details of the confession on each element of the charged offense, or indeed to any particular element of the charged offense." *Id*. Furthermore, the independent evidence required by the *corpus delicti* rule is "far less" than that needed to prove a defendant's guilt beyond a

reasonable doubt. *Id.* ¶ 45. Accord *People v. Underwood*, 2019 IL App (3d) 170623, ¶ 11. See also *Hannah*, 2013 IL App (1st) 111660, ¶ 29 (referencing the "slight level of evidence" necessary to establish *corpus delicti*).

¶ 35    Defendant contends that we must review a *corpus delicti* issue *de novo* "because it is a question of law whether the State showed any corroborating evidence, independent of the accused's confession, that tends to show that a crime was committed." As Illinois courts have consistently viewed *corpus delicti* issues as challenges to the sufficiency of the evidence, we reject defendant's contention regarding the applicable standard of review. See, *e.g.*, *People v. Milan*, 2020 IL App (1st) 172181, ¶ 13 (addressing a *corpus delicti* question as a challenge to the sufficiency of the evidence); *People v. Hurry*, 2013 IL App (3d) 100150-B, ¶ 11 (same); *People v. Lurz*, 379 Ill. App. 3d 958, 968 (2008) (stating that the court must review the defendant's *corpus delicti* challenge "within the familiar parameters for attacking a conviction for insufficiency of the evidence"); *People v. Salinas*, 347 Ill. App. 3d 867, 879-80 (2004) (rejecting the defendant's contention that *de novo* review is appropriate to evaluate compliance with the *corpus delicti* rule).

¶ 36    The relevant question is thus " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). See also *Hannah*, 2013 IL App (1st) 111660, ¶ 27 ("[v]iewing the evidence in the light most favorable to the State, we find that the State proved the *corpus delicti* of the offense"); *People v. Thomas*, 2021 IL App (1st) 190332-U, ¶ 27 ("in evaluating whether there was sufficient proof to satisfy the *corpus delicti* rule, we assess whether, viewing the evidence and reasonable inferences therefrom in the

light most favorable to the prosecution, the trier of fact could have found defendant guilty beyond a reasonable doubt"). It is not the function of the reviewing court to retry the defendant (*People v. Jackson*, 2020 IL 124112, ¶ 64), and the trier of fact "remains responsible for making determinations regarding the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence." *People v. Ross*, 229 Ill. 2d 255, 272 (2008). Accord *People v. McLaurin*, 2020 IL 124563, ¶ 22.

¶ 37                                *Defendant's DUI Conviction*

¶ 38    Defendant was convicted of DUI under section 11-501(a)(1) of the Illinois Vehicle Code. 625 ILCS 5/11-501(a)(1) (West 2018). As relevant to this case, the offense has two elements: (a) defendant drove or was in actual physical control of a vehicle; and (b) her blood alcohol concentration was 0.08 or more. *Id.* We note that defendant's arguments on appeal focus solely on the first element: whether she drove or was in physical control of a vehicle.[2]

¶ 39    Although defendant primarily contends that the State failed to present independent evidence to corroborate her "confession" to Officer Chiovari – *i.e.*, her admission or statement that she was the driver – she initially suggests that she never even admitted that she drove the vehicle. Simply put, we reject this suggestion. Not only has defendant impermissibly raised this "no admission" argument for the first time on appeal, but such argument is inconsistent with her position in her motion to reconsider (and throughout the circuit court proceedings) that "there was no evidence independent of [d]efendant's admission to establish that [d]efendant was in fact

---

[2] Section 11-501(a) refers to driving or being in actual physical control of a vehicle. 625 ILCS 5/11-501 (West 2018). "[I]f a person is shown to be operating a vehicle, that person is also, by the very nature of operating that vehicle, exerting actual physical control over the vehicle." *People v. Niemiro*, 256 Ill. App. 3d 904, 909 (1993). Conversely, "[a] person who is shown to be exerting physical control over a vehicle need not be shown to have been operating the vehicle, but only that the person had the capability or potential to do so." *Id.* In this case, as the vehicle was moved or operated such that it was involved in a collision, we need not parse any distinctions between driving and actual physical control.

the driver of the car." *E.g.*, *People v. Mudd*, 2022 IL 126830, ¶ 21 (providing that "an issue not accompanied by a contemporaneous trial objection and raised in a posttrial motion is forfeited"). In any event, we find that Officer Chiovari's testimony indicated that defendant admitted to him that she was driving a vehicle, *e.g.*, she relayed that "she was traveling southbound on Oak Park" prior to the collision.

¶ 40    We recognize that Officer Chiovari did not view defendant driving a vehicle. It is well established, however, that observation of a defendant in the act of driving is not an "indispensable prerequisite" for a DUI conviction. *Lurz*, 379 Ill. App. 3d at 969; *People v. Foster*, 138 Ill. App. 3d 44, 46 (1985). Defendant also points to other potential evidence which could have been presented but was not, *e.g.*, her possession of vehicle keys or her name on the vehicle registration. Illinois courts have been clear, however, that such factors are not exhaustive and that the issue of a defendant's physical control of a vehicle "must be decided on a case-by-case basis." *People v. Slinkard*, 362 Ill. App. 3d 855, 859 (2005). See also *Underwood*, 2019 IL App (3d) 170623, ¶ 20 (noting the fact that "certain evidence is sufficiently corroborative in one fact-specific case *** does not mean that the absence of such evidence in another case is fatal"). As discussed below, we find that independent evidence in this case tends to corroborate defendant's admission that she was driving.

¶ 41    Officer Chiovari was dispatched to a vehicle collision, where he observed that two vehicles had sustained significant damage. The fact that one vehicle remained stopped in a traffic lane indicated that the collision had recently occurred. *But cf. Foster*, 138 Ill. App. 3d at 46-47 (concluding that the *corpus delicti* was not proved where the record failed to disclose the circumstances of the accident and the length of time the vehicle was stopped). Defendant's subsequent complaint of back pain and her statement to nurse Pettinato that she was in an

accident corroborated her involvement in a recent vehicle collision.

¶ 42     Officer Chiovari testified that he observed defendant "outside of her vehicle on the sidewalk." Her proximity to the vehicle, coupled with the absence of any other individuals near the vehicle, suggests she was the driver. *Underwood*, 2019 IL App (3d) 170623, ¶ 15 (providing that the defendant "being the only person in the vicinity of the Ford Explorer correspond[ed] with her admission that she was driving the vehicle"); *Rhoden*, 253 Ill. App. 3d at 812 (noting that the defendant was standing next to the vehicle after the accident). Defendant complied with Officer Chiovari's requests for her driver's license and insurance information, which is consistent with her having driven the vehicle.

¶ 43     At the scene, defendant described the collision to Officer Chiovari. See *Underwood*, 2019 IL App (3d) 170623, ¶ 15 (finding that the defendant's knowledge of the accident corresponded with her admission of driving). Defendant contends on appeal that Officer Chiovari's skepticism regarding defendant's description of the collision – based on his observation of the physical placement of the vehicles – casts doubt on whether she was the driver, *i.e.*, "may be more consistent with her being a passenger." We decline to engage in such speculation. "The requirement that corroborative evidence tend to show the commission of a crime cannot be construed to require that the same corroborative evidence foreclose every other possible explanation of that evidence." *Id.* ¶ 17. While defendant posits that the inconsistency between her description of the collision and Officer Chiovari's observations may "be explained by [defendant] not being the driver, and therefore not paying as close attention to the car's exact movements and position," the simplest explanation – particularly in the absence of any indication of another individual having been in the vehicle – is that she was the driver. *Id.* (stating that "we are aware of no case that would indicate the corroborative evidence necessary for satisfaction of

the *corpus delicti* rule must be so strong as to eliminate all other possibilities").

¶ 44    Defendant's apparent decision to provide a false urine sample at the hospital provides further corroboration of her having driven the vehicle.  "[C]orroboration is sufficient to satisfy the *corpus delicti* rule if the evidence, *or reasonable inferences based on it*, tends to support the commission of a crime that is at least closely related to the charged offense."  (Emphasis added.) *Lara*, 2012 IL 112370, ¶ 45.  To the extent that defendant gave a false urine sample, a reasonable inference is that she was concerned regarding discovery of her potential impairment, which would presumably be an issue only if she had been driving.  See, *e.g.*, *People v. Johnson*, 218 Ill. 2d 125, 140 (2005) (providing that "evidence of a person's refusal to take a test designed to determine the person's blood-alcohol content is admissible and may be used to argue the defendant's consciousness of guilt").

¶ 45    Viewing the evidence in the light most favorable to the State, we find that the State presented sufficient evidence to independently corroborate the *corpus delicti* of the offense, *i.e.*, that defendant drove or was in actual physical control of a vehicle.  See *People v. Pitts*, 2016 IL App (1st) 132205, ¶ 31.  "If a confession is sufficiently corroborated under the *corpus delicti* rule, the trier of fact may consider the confession along with the State's other evidence to determine whether the State proved beyond a reasonable doubt that a defendant committed the charged offense."  *Sanchez*, 2019 IL App (3d) 160643, ¶ 15.  Accord *People v. Willlingham*, 89 Ill. 2d 352, 360 (1982).

¶ 46    For the reasons described above, any rational trier of fact could have found the essential elements of DUI under subsection 11-501(a)(1) of the Illinois Vehicle Code beyond a reasonable doubt.  See 625 ILCS 5/11-501(a)(1) (West 2018).  In addition to the evidence regarding defendant's physical control of the vehicle, the circuit court heard expert testimony from a

forensic toxicology specialist (Bash) that defendant's blood alcohol concentration was 0.118 – more than the statutory limit of 0.08. See *id.* A conviction will be reversed only where the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of defendant's guilt. *Jackson*, 2020 IL 124112, ¶ 64; *Ross*, 229 Ill. 2d at 272. We find that the evidence presented in this case was not so improbable or unsatisfactory that it created a reasonable doubt as to defendant's guilt as to the DUI charge under subsection 11-501(a)(1) of the Illinois Vehicle Code.

¶ 47                                    CONCLUSION

¶ 48    The judgment of the circuit court of Cook County is affirmed in its entirety.

¶ 49    Affirmed.